[No. 25117.   Department One.   September 24, 1934.]

J. E. PETERSON, *as Receiver, Respondent*, v. NATIONAL
DISCOUNT CORPORATION, *Appellant*.[1]

[1]Reported in 35 P. (2d) 1097.

*Ballinger, Clark, Mathewson & Force* and *Joe S. Pearson,* for appellant.

*J. Elwood Peterson* and *Chadwick, Chadwick & Mills,* for respondent.

MILLARD, J.—On March 28, 1932, J. E. Peterson was appointed receiver of the insolvent Solon Grinding Company, a domestic corporation. This action was instituted by the receiver to set aside, as unlawful preferences, assignments of accounts receivable made by the insolvent corporation to the defendant within four months prior to the date of the filing of the application for the appointment of a receiver of the corporation, and to recover the amounts paid to defendant assignee on assignments made within that period. .

The trial court found that the assignments were given as security for payment of loans of money, and were void as unlawful preferences; that the defendant assignee had collected on the assigned accounts, within four months immediately preceding the receivership, $1,942.68, of which amount $352.92 was collected on accounts that had been assigned to the defendant more than four months before the receivership; and that the receiver was entitled to judgment against defendant assignee in the sum of $1,942.68, less the credit of $352.92. Judgment was entered accordingly. Defendant has appealed.

The facts are as follows:

The insolvent corporation was engaged in the business of supplying babbit, babbited bearings, and like products, in the Northwest states. The appellant, a domestic finance corporation, was engaged in the business of financing business concerns whose needs are not covered by the ordinary commercial bank. One witness testified, "Our business is generally conducted

to financing any business which the banks will not handle.'' Appellant states that,

" . . . in doing this, it bought chattel mortgages, conditional sales contracts, accounts receivable, and occasionally notes, loaned money on chattel mortgages, trust receipts and sold either outright or on conditional sale contract, property repossessed on forfeited conditional sales contracts or chattel mortgages.''

While appellant purchased at a discount sales contracts, accounts receivable, notes, etc., it was engaged in the business of lending money upon the security of accounts receivable and other security. It is clear that, except in the repossession and sale thereafter of property on forfeited conditional sale contracts or chattel mortgages, the appellant did not engage in the business of buying and selling merchandise or other property.

In 1928, the Solon Grinding Company applied to the appellant for financial assistance. Thereafter, continuing to within three days prior to the appointment of a receiver for the grinding company, money was advanced from time to time by appellant to the grinding company. Certain schedules of accounts receivable were prepared by the grinding company and submitted to the appellant. Upon its approval of the accounts, appellant would advance eighty per cent of the total amount of the accounts, less a service charge and less a discount charge of one per cent a month.

During the four-month period preceding the receivership, the practice was to take the assignments on three periodic dates, one on the 5th, one on the 15th and one on the 25th of each month. Each of the three series had a due date or "sale date" on the same date of the following month. At that time, a new schedule of accounts receivable, containing some of the same accounts, and some new accounts, would be prepared

by the grinding company and submitted to the appellant. After discounting the new schedule twenty per cent, plus one per cent interest per month, and the service charge, the appellant would redeliver the old schedule of the accounts receivable to the grinding company and give to the grinding company a check for the difference between the amount of the old assignment and the amount of the new assignment, if there remained a surplus on the new assignment.

Illustrative of this is assignment No. 3055-82, of March 25, 1932. On that date, the grinding company submitted a schedule of accounts receivable, amounting to $980.57. This was discounted $196.11, leaving a balance of $784.46. The handling charges amounted to $13.31. The accounts assigned February 25, 1932, amounted to $1,148.22. A discount of twenty per cent reduced the amount to $918.56. Of those accounts, $147.41 was collected and paid to the appellant. From the debt of February 25, 1932, amounting to $918.56, there was deducted $147.41, the amount collected on the assigned accounts of February 25, 1932, leaving a balance of $771.15 due to appellant on the debt of $918.56 incurred under the assignment of February 25, 1932. This amount of $771.15 was charged back against the grinding company; that is, the assignment March 25, 1932, of accounts amounted to $980.57. From that, the appellant deducted the discount of twenty per cent, $196.11, the handling charge of $13.31, the indebtedness of February 25, 1932, in the amount of $771.15, or a total of $980.57. There was no surplus this time.

No note or other evidence of indebtedness was given by the grinding company to the appellant.

On the page scheduling the accounts which were assigned is a recital, signed by the grinding company and accepted by the appellant, to the effect that, in

consideration of one dollar and other valuable considerations, the grinding company "sells, assigns and sets over" to the appellant all its right, title and interest in and to the accounts receivable listed above. The assignment in each case is conditioned upon lengthy, printed provisions on the back of each assignment, and recites that the grinding company desires to sell to the appellant the open accounts receivable, and that the appellant purchases such accounts on the terms therein stated. Notice was not given of the assignment of the accounts by the assignor or the assignee to the original debtors, it being understood between the parties that the fact of the assignment should be withheld from such debtors.

The grinding company, pursuant to agreement of the parties, made collections upon the accounts, and from time to time transmitted the original checks received therefor to the appellant. There was an occasional departure from this plan, due to the fact that payments were sometimes made in cash, and in a few instances the collections made were appropriated by the officers of the grinding company.

It appears that, when goods were returned to the grinding company by customers whose accounts had been assigned, the grinding company was permitted to credit its debtor with the value of the goods returned; that is, the grinding company was permitted to "contra" the accounts after assignment by allowing set-offs against the same because of accounts due from the grinding company to individual debtors whose accounts had been assigned to the appellant.

The accounts in the assignor's accounts receivable ledger assigned to the appellant were stamped by representatives of the grinding company, "This account sold to National Discount Corporation," with a stamp

supplied by the appellant to the grinding company for that purpose.

The appellant carried the transaction on its books as a loan, and the subsequent assignments were referred to upon the records of appellant as renewals. Credits allowed on new assignments were credited as upon a loan. The transaction was carried upon the books of the grinding company as money borrowed from and due to the appellant. One of the notices to the grinding company by the appellant, under date of April 7th, calls the borrower's attention to the fact that "a payment on your direct loan" was due on April 5th.

It fairly appears that, from a date prior to November 28, 1931, the grinding company was unable to pay its debts in the usual course of business, and that the appellant was definitely charged with notice of the insolvency of the grinding company. In fact, on the last three assignments taken prior to March 28, 1932, only fifty-five dollars in cash was advanced to the grinding company by the appellant. Following his appointment in 1932, the receiver of the Solon Grinding Company refused to recognize the validity of the assignments then outstanding, and instituted this action, with the result above stated.

Three questions are presented by the appeal: (1) Did the transactions between the insolvent corporation and the appellant amount to sales of the accounts receivable, as counsel for appellant contend, or did the transactions constitute assignments of the accounts receivable as security for payment of loans of money? (2) If the accounts receivable were assigned to secure payment of loans, was there such retention of dominion by the assignor over the pledged accounts as invalidated the assignments, under the statute, Rem. Rev. Stat., § 5831-2 [P. C. § 4532-2], and under the rule

enunciated in *Fales Co. v. Seiple Co.,* 171 Wash. 630, 19 P. (2d) 118, and in *Benedict v. Ratner,* 268 U. S. 353, 45 S. Ct. 566? (3) Was appellant lender entitled to credit for money advanced to the insolvent borrower during the period of four months immediately preceding the receivership?

The position of the appellant that each transaction was a *bona fide* sale by the grinding company of certain of its accounts receivable is not tenable. As stated above, appellant was in the business of lending money, and it was not engaged in any other business. The grinding company was not in the business of buying or selling the accounts of others. It assigned its accounts receivable to the appellant as security for payment of money advanced to it by the appellant. In the trial court's memorandum decision, appears the following apt observation:

"It negotiated with the defendant for the use of money or credit. The defendant had no use for the property of the plaintiff except as security for the money which it advanced. The plaintiff's compensation for the commodity it was selling was a percentage computed upon the sum advanced. A mere legal disguise will not change the character of the transaction. If it were necessary to point out certain elements which stamp the transaction as one of credit, these, among others, might be suggested:

"(1) The transaction is set up on the books of the defendant as a 'loan.'

"(2) Inclusion of same account in numerous 'sales.'

"(3) Reference to 'renewals.'

"(4) Reservation of 20% margin which remains a contingent but certain interest of the plaintiff.

"(5) Collection of money due by original owner.

"(6) Secrecy as to fact of assignment so far as original debtor is concerned, concealing thereby the fact of impaired credit conditions.

"(7) Acquiescence in 'contra' accounts.

"(8) Rejection of claims formerly purchased after 90 days old.

"(9) Credit 'memoranda.'

"(10) The payment of interest or discount.

"These elements are not common to a *bona fide* sale made between a vendor and a vendee."

In holding that transactions wherein a contractor assigned construction contracts to finance company for percentage of amount due thereon constituted a loan and not a sale, the supreme court of Pennsylvania, in *Kelter v. American Bankers' Finance Co.*, 160 Atl. (Pa.) 127, used the following language which is applicable to the facts in the case at bar:

" 'We cannot reconcile the payment of interest and finance charges, nor of the buyer's expenses in "searches" with the idea that the contractor had sold his contract to the banker. The parties may call this what they please. It is in fact nothing but a loan upon the collateral of the assigned contract.'

"In cases of this kind it is more important what parties actually do than what they say they do. Courts will not be controlled by the nomenclature the parties apply to their relationship. *Root v. Republic Acceptance Corp.*, 279 Pa. 55, 57, 123 A. 650; *S. F. Bowser & Co., Inc., v. Franklin Mortgage & Investment Co.*, 305 Pa. 459, 158 A. 170 (opinion filed Nov. 23, 1931). In *Sterling Commercial Co. v. Smith*, 291 Pa. 236, 139 A. 847, a purported sale was held to be nothing more than a pledge of collateral to secure a loan, and void as against creditors of the pretended vendor. Transactions similar in character to these have frequently been held to be in fact loans, though apt words importing sales were used by the parties. In *Home Bond Co. v. McChesney*, 239 U. S. 568, 575, 36 S. Ct. 170, 173, 60 L. Ed. 444, the language of the court was this: 'In so far as the contracts in question here use words fit for a contract of purchase, they are mere shams and devices to cover loans of money at usurious rates of interest.' See the following federal cases to the same effect: *National Trust & Credit Co. v. F. H.*

116

*Orcutt & Son Co.* (C. C. A.) 259 F. 830; *Brierley v. Commercial Credit Co.* (D. C.) 43 F. (2d) 724, 730; *In re Gotham Can Co.* (C. C. A.) 48 F. (2d) 540.''

Appellant did not purchase the accounts receivable from the grinding company. The accounts were assigned by the grinding company to appellant to secure payment of loans by the latter to the former.

In *Fales Co. v. Seiple Co.,* 171 Wash. 630, 19 P. (2d) 118, we adopted the rule enunciated in *Benedict v. Ratner,* 268 U. S. 353, 45 S. Ct. 566, and held that reservation by the assignor of dominion inconsistent with the effective disposition of title renders an assignment of accounts receivable invalid as to third parties. The supreme court of the United States in *Benedict v. Ratner, supra,* said:

"But it would seem clear that whether the collateral consist of chattels or of accounts, reservation of dominion inconsistent with the effective disposition of title must render the transaction void. . . . A title to an account good against creditors may be transferred without notice to the debtor or record of any kind. But it is not true that the rule stated above and invoked by the receiver is either based upon or delimited by the doctrine of ostensible ownership. It rests not upon seeming ownership because of possession retained, but upon a lack of ownership because of dominion reserved. It does not raise a presumption of fraud. It imputes fraud conclusively because of the reservation of dominion inconsistent with the effective disposition of title and creation of a lien.
. . .

"The results which flow from reserving dominion inconsistent with the effective disposition of title must be the same whatever the nature of the property transferred. The doctrine which imputes fraud where full dominion is reserved must apply to assignments of accounts although the doctrine of ostensible ownership does not. There must also be the same distinction as to degrees of dominion. Thus, although an agreement that the assignor of accounts shall collect

them and pay the proceeds to the assignee will not invalidate the assignment which it accompanies, the assignment must be deemed fraudulent in law if it is agreed that the assignor may use the proceeds as he sees fit.

"In the case at bar, the arrangement for the unfettered use by the company of the proceeds of the accounts precluded the effective creation of a lien and rendered the original assignment fraudulent in law."

The assignor was permitted, with the knowledge of the appellant assignee, to allow credits to debtors upon assigned accounts for merchandise returned, and was also permitted to make adjustments and allow other credits. That, alone, constituted an exercise by the assignor grinding company of such dominion over the assigned accounts as invalidates the assignments, under the doctrine of *Benedict v. Ratner, supra,* and *Fales Co. v. Seiple Co., supra.*

In *Lee v. State Bank & Trust Co.,* 54 Fed. (2d) 518, 85 A. L. R. 216, the United States circuit court of appeals, second circuit, held that, where the assignor of accounts receivable was permitted to exercise dominion over goods returned by customers whose accounts had been assigned, the assigned accounts were, by reason of such partial dominion, invalidated, under the rule announced in *Benedict v. Ratner, supra.* The court said:

"The validity of the assignments turns upon the practice of the pledgor and pledgee with respect to goods returned by customers whose accounts had been assigned. By the terms of the written agreement under which the accounts were pledged, the bankrupt agreed, if part of the goods covered by an assigned account were returned, to 'receive the same in trust for the said The State Bank under advice to them and surrender it, or the proceeds thereof if sold, upon demand.' But, despite these written words to the contrary, if the real agreement of the parties reserved

118

to the pledgor dominion over returned goods, this would invalidate the entire assignment under the doctrine of *Benedict v. Ratner*, 268 U. S. 353, 45 S. Ct. 566, 69 L. Ed. 991.''

The doctrine of *Lee v. State Bank & Trust Co.*, *supra*, that reservation to pledgor of dominion over returned goods invalidates pledgor's assignment of accounts receivable as security for loans by pledgee, was adhered to by the United States circuit court of appeals, second circuit, in *Irving Trust Co. v. Finance Service Co.*, 63 Fed. (2d) 694.

It can hardly be successfully urged that appellant's taking of the proceeds of the accounts receivable did not constitute a voidable preference.

If an insolvent corporation, within four months prior to the filing of an application for the appointment of a receiver of such corporation, makes a transfer of any of its property, and the transfer would enable any one of the creditors of the insolvent corporation to obtain a greater percentage of his debt than any other of such creditors of the same class, such transfer is a voidable preference, and the receiver of the insolvent corporation may recover from the transferee the property or its value.

''a. A corporation shall be deemed to have given a preference if, being insolvent, it has, within four months before the filing of an application for the appointment of a trustee, receiver, or other liquidating officer of such corporation, procured or suffered a judgment to be entered against itself in favor of any person, or made a transfer of any of its property, and the effect of the enforcement of such judgment or transfer will be to enable any one of the creditors of said insolvent corporation to obtain a greater percentage of his debt than any other of such creditors of the same class.

''b. If a corporation shall have procured or suffered a judgment to be entered against it in favor of

any person or has made a transfer of any of its property, and if, at the time of the transfer, or of the entry of the judgment, the corporation be insolvent and the judgment and transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee, receiver, or other liquidating officer of said insolvent corporation, and he may recover the property or its value from such person." Rem. Rev. Stat., § 5831-2 [P. C. § 4532-2.]

The appellant took its security, the assignments of accounts receivable, at a time when the assignor grinding company was insolvent and within four months prior to the filing of an application for the appointment of a receiver of the insolvent corporation. Appellant must have known (under the facts recited, it was charged with knowledge) that the assignor was insolvent within the four months' period. Under the rule announced in *Benedict v. Ratner,* 268 U. S. 353, 45 S. Ct. 566, and adopted by us in *Fales Co. v. Seiple Co.,* 171 Wash. 630, 19 P. (2d) 118, the grinding company's assignments of its accounts receivable to the appellant to secure the payment of the former's indebtedness to the latter were void. Except for a change of dates and changing "respondent" to "appellant," the following language of the opinion in *Fales Co. v. Seiple Co.,* 171 Wash. 630, 19 P. (2d) 118, is as applicable to the facts in the case at bar as it was to the facts in that case:

"The respondent took its security at a time when its debtors were insolvent, and within four months before the filing of the petitions in bankruptcy. It follows that respondent can not be permitted to retain, as against appellant, accounts collected by the respondent subsequent to December 2, 1930. . . .

Respondent had every reason to believe, under the facts recited above and which need not be reiterated, that, when it took charge of the corporations in December, 1930, those corporations were insolvent. It was not a matter of suspicion. It must have known. It will not be permitted to close its eyes to facts which were sufficient to put an ordinarily prudent man upon inquiry.

" 'But a transfer is not voidable under section 60b in the absence of the "reasonable cause to believe," etc., expressed in that section, even if other elements of a preference accompany it. The requirement of "reasonable cause to believe" does not demand actual knowledge or actual belief, nor does a mere suspicion in the creditor's mind charge him with having "reasonable cause." In determining whether the creditor had reasonable cause to believe that a preference was intended, facts which are sufficient to put an ordinarily prudent man upon inquiry charge the creditor with all the knowledge he could have acquired by the exercise of reasonable diligence.' 3 R. C. L. 278, § 105."

Appellant argues that the transfers now before the court were not given for a pre-existing debt, therefore there could be no voidable preference. That is, the assignments were made for a partial present consideration and partially in exchange for prior security held by the appellant. In the assignment of the new accounts within the four months' period, the appellant was given accounts twenty per cent in excess of the amount of the assignor's then existing indebtedness to the appellant assignee. By each new assignment of the twelve assignments made on the 5th, 15th and 25th of each month from December 5, 1931, to and including March 25, 1932, the appellant's position was bettered. It received in lieu of the discarded accounts new accounts rated as of greater value. While there was advanced within the four months' period a small sum (less than seven hundred dollars) of money, the security taken at the time of the advancement of the

money, with the exception of $55.83 advanced on the assignment of accounts March 5, 1932, was subsequently relinquished for assignment of new accounts. That bettered further the appellant's position as a creditor. Such relinquishment of the old and taking of the new accounts displaced appellant from its position of having paid a partial present consideration for security it held. It took, as respondent insists, the final assignments, with the exception of $55.83, "for nothing but pre-existing indebtedness," and

". . . that the money received by the appellant constituted a depletion of the assets of the insolvent corporation and that the assignments of the new schedules of accounts receivable constituted a depletion of the assets of the corporation."

All of the assignments made within four months preceding the receivership were invalid as unlawful preferences, and the receiver was entitled to recovery of the money collected on assigned accounts, as stated above, under the provisions of Rem. Rev. Stat., § 5831-2 [P. C. § 4532-2], and the doctrine of *Benedict v. Ratner, supra,* and *Fales Co. v. Seiple Co., supra.*

■ The cash advanced by appellant to the insolvent grinding company on the twelve assignments from December 5, 1931, to March 25, 1932, totaled $681.21. Appellant contends that, under the statute (Rem. Rev. Stat., § 5831-3 [P. C. § 4532-3], subd. a), reading as follows, it is entitled to a credit in that amount against any recovery to which the receiver is entitled:

"In all cases of mutual debts or mutual credits between the insolvent corporation and a creditor the amount shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

The section quoted is not applicable in an action by a receiver of an insolvent corporation to set aside

an unlawful preference. This is not the mutual indebtedness contemplated by the statute. The provision pertinent to the right of offset in a suit by a receiver to recover upon a preference reads as follows:

"If a creditor has been preferred, and afterwards in good faith gives the insolvent corporation further credit without security of any kind for property which becomes a part of the assets of the insolvent corporation, the amount of such new credit remaining unpaid at the time of the application for the appointment of a trustee, receiver or other liquidating officer for such corporation, may be set off against the amount which would otherwise be recoverable from him." Rem. Rev. Stat., § 5831-2 [P. C. § 4532-2], subd. c.

There was no mutual debt or mutual credit. Appellant's liability is a statutory obligation. It is owed to the receiver for the insolvent corporation because of unlawful preferences received by the appellant. The security taken by the appellant for the money it advanced was a void assignment of accounts receivable. To permit the credit or offset for which appellant contends, would be to validate *pro tanto* the assignments, which is exactly the effect which it is the purpose of the statute to prevent.

The judgment is affirmed.

BEALS, C. J., STEINERT, GERAGHTY, and MAIN, JJ., concur.

## ON REHEARING.

[*En Banc.* February 25, 1935.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the Departmental opinion heretofore filed herein.