LEE P. HILL, *as Receiver, Respondent,* v. H. A. BRANDES
*et al., Appellants.*[1]

[1]Reported in 95 P. (2d) 382.

*Earl V. Clifford,* for appellants.

*James V. Ramsdell,* for respondent.

MILLARD, J.—This action was instituted by the receiver of an insolvent corporation to recover moneys paid by the corporation to defendant creditors after the corporation became insolvent. Trial of the cause to the court without a jury resulted in findings of fact from which it was concluded that the plaintiff was entitled to recover against defendants in the amount

of $2,010.48 on the first seven causes of action—seven conditional sales contracts hereinafter described—and $59.27 on the eighth cause of action—Williamson's assigned repair bill—with interest on each account at the rate of six per centum per annum from the respective dates of payment to defendants; and that defendants are entitled to make an additional claim as a general claim against the receiver in the amount of the judgment rendered against them, when they have paid the judgment. From the judgment entered in consonance with the foregoing, defendants appealed.

As no bill of exceptions or statement of facts has been brought to this court, the cause is before us upon the facts as found by the trial court and the law applicable thereto.

The Commercial Auto Parts corporation was insolvent for more than four months prior to May 27, 1938, date of appointment of respondent as receiver for that corporation. The corporation, whose principal place of business was in Tacoma, was engaged in buying and selling automobiles and conducting a general automobile repair business. Appellants H. A. Brandes and G. E. Madsen were copartners engaged in Tacoma in the business of financing the purchase of automobiles and buying of automobile sales contracts.

As vendor, the corporation sold, under written conditional sales contract, automobiles to seven purchasers, which contracts were sold and assigned by the corporation to appellants and duly filed in the office of the county auditor. Each of the seven purchasers under the conditional sales contract returned the automobiles to the vendor in trade for other automobiles and transferred to the vendor his rights under the contract. With knowledge of appellants, the vendor corporation resold the automobiles covered by the conditional sales contracts and received proceeds due under the sales

contracts in the amount of the unpaid balance on each contract. The proceeds were mingled by the vendor among its funds and placed in its general bank account. The funds became commingled with other funds of vendor corporation.

Within four months prior to the appointment of respondent receiver, payments were made to appellants by vendor corporation, by checks against the corporation's general bank account, in each instance after the lapse of one month and eight days in one case, to about nine months in another case, from the date that the proceeds of the resales were deposited in the vendor corporation's general bank account. During those periods, the general bank account of the corporation was overdrawn at numerous times, and no part of the funds in question can be traced.

The trial court further found that, by virtue of the payments just described, appellants received a greater proportion of their claimed indebtedness against the insolvent corporation than will be received by the corporation's other general creditors. There was no collusive understanding or agreement between the vendor corporation and the appellants in connection with payment of the balance in regard to the preference of the appellants over any creditors of the corporation on account of the corporation's insolvency. No demand was made by respondent upon the appellants for return of the payments of the balances on the contracts prior to the commencement of this action November 26, 1938.

The situation as to the first seven causes of action, except for names, dates, and amounts, is the same in each. The date of each payment and the amount thereof, aggregating $2,010.48, recovered on the first seven causes of action, are as follows: March 12, 1938, $313.12; February 5, 1938, $308.28; February 28, 1938,

$249.60; May 10, 1938, $447, $264.98, $213, and $214.50. The facts in the first cause of action, which is typical, are summarized as follows:

In April, 1937, Earl Lichty purchased an automobile on conditional sales contract from the predecessor of respondent's insolvent corporation. The contract was sold and assigned by the vendor to appellants for valuable consideration and was not an assignment to secure payment of an indebtedness. On June 16, 1937, that automobile was taken back by the vendor, who, on July 2, 1937, resold that automobile on conditional sales contract. This second contract was immediately sold and the proceeds therefrom deposited in the general bank account of the vendor corporation and commingled with its other funds. These facts were within the knowledge of appellants. Between July 2, 1937, the date of resale, and March 12, 1938, the general bank account of the corporation was overdrawn numerous times and no part of the proceeds obtained on resale of the automobile can be traced.

On March 12, 1938, when the vendor corporation was insolvent and within four months prior to the application for the appointment of the receiver, the vendor corporation paid to appellants $313.12, by check out of its general bank account, in payment of the balance due under the original contract of sale of the automobile. This payment, and the other six described above, are attacked by the receiver as unlawful preferences made to appellants.

The facts as to the eighth cause of action are as follows: Prior to March 10, 1938, the vendor corporation sold an automobile to R. W. Williamson on conditional sales contract, which contract was immediately sold to appellants. Subsequently, Williamson damaged his automobile. At Williamson's request, the vendor corporation repaired that car at a cost of $59.27. The ap-

pellants refinanced the purchase of that automobile by chattel mortgage. By assignment, the repair bill of $59.27 due to the vendor corporation was included in the chattel mortgage. The assignment of the repair bill was made without any consideration passing to the corporation at a time when it was insolvent and within four months prior to the application for the appointment of respondent receiver. Appellants denied they ever collected anything on that account or received any benefit for that assignment. The court found "there was no showing to the contrary." Appellants' tender of return of the account to the respondent was rejected, and the court found that respondent was not obliged to accept the tender of the reassignment.

A domestic corporation cannot after insolvency prefer one or more of its creditors. Its property is, after insolvency, regarded as a trust fund for all of its creditors, and any payments or transfers of property made after insolvency which have the effect of preferring one creditor over another are void. *Thompson v. Huron Lumber Co.*, 4 Wash. 600, 30 Pac. 741, 31 Pac. 25; *Sterrett v. White Pine Sash Co.*, 176 Wash. 663, 30 P. (2d) 665; *Meier v. Commercial Tire Co.*, 179 Wash. 449, 38 P. (2d) 383. See, also, *Peterson v. National Discount Corp.*, 179 Wash. 108, 35 P. (2d) 1097, 41 P. (2d) 1119.

While the trust fund doctrine was not a part of the common law of England, it became, by the decisions of the courts of this state and other states which have adopted that doctrine, the common law of those states.

In 1931 (Laws of 1931, chapter 47, p. 160, Rem. Rev. Stat., § 5831-1 [P. C. § 4532-1] *et seq.*), the legislature confirmed the trust fund theory adopted by this court prior to that time. The act provides, among other things, that a corporation shall be deemed to have given a preference if, being insolvent, it has, within

four months prior to the date of the filing of an application for the appointment of a receiver, transferred any of its property and the effect of such transfer would be to enable any one of the creditors of the insolvent corporation to obtain a greater percentage of his debt than any other of the creditors of the same class.

"If an insolvent corporation, within four months prior to the filing of an application for the appointment of a receiver of such corporation, makes a transfer of any of its property, and the transfer would enable any one of the creditors of the insolvent corporation to obtain a greater percentage of his debt than any other of such creditors of the same class, such transfer is a voidable preference, and the receiver of the insolvent corporation may recover from the transferee the property or its value." *Peterson v. National Discount Corp.*, 179 Wash. 108, 35 P. (2d) 1097, 41 P. (2d) 1119.

Clearly, the amounts paid to the appellants as set forth in the first seven causes of action were paid within four months prior to the application for the appointment of the receiver at a time when the corporation was insolvent. Those payments enabled the appellants to obtain a greater proportion of their claimed indebtedness against the insolvent corporation than would the other general creditors of the insolvent corporation.

Appellants insist that they had a lien against, or right to, the substituted funds and are entitled to retain the ultimate payments which they received, in view of the statute, reading as follows:

"If a written contract for the conditional sale of personal property be assigned by the vendor or an assignee thereof by written instrument to secure a debt or other obligation the assignee, in the absence of a contrary intent expressed in the assignment, and whether or not the same be upon its face absolute, shall have the right to enforce all the vendor's remedies

under the contract and said assignee shall have a lien upon the property covered thereby as against the vendor and any subsequent assignee thereof, the creditors and subsequent purchasers and encumbrancers of either, which lien may be enforced as a chattel mortgage is enforced, no filing of said assignment being necessary. No such assignment shall be deemed invalid as against creditors and subsequent purchasers, pledgees, mortgagees and encumbrancers of assignor by reason of failure of any assignee to assume dominion and control over any such contract so assigned or the proceeds thereof, or to contract against or to prevent the mingling by assignor of the proceeds thereof or collections therefrom amongst his funds or placement of the same in his bank account." Laws of 1937, chapter 196, p. 971, § 2, Rem. Rev. Stat. (Sup.), § 3791-1 [P. C. § 9743-1].

In *Flynn v. Garford Motor Truck Co.,* 149 Wash. 264, 270 Pac. 806, we construed the prior enactment of the conditional sales statute, which is, so far as the question before us is concerned, the same as the present statute. We held that the statute providing for the filing of an assignment of a conditional sales contract executed to secure a debt does not authorize the filing of an absolute assignment and does not apply to a conditional sales contract sold absolutely for valuable consideration.

The trial court found that the conditional sales contracts in the case at bar upon which the preferential payments were made were sold and assigned in writing for a valuable consideration to the appellants. There is no showing that these assignments were made for the purpose of securing payment of indebtedness of the vendor corporation to the appellants.

Conceding, *arguendo,* that the statute (Rem. Rev. Stat. (Sup.), § 3791-1), entitled the appellants to a lien against the proceeds received by the insolvent corporation on resale of the automobile covered by the

conditional sales contract, those proceeds, with knowledge chargeable to the appellants, were dissipated. At that stage, in so far as the obligation of the insolvent corporation to appellants to pay the balance due on the original contract which had been assigned to the appellants is concerned, appellants were in the position of unsecured creditors. At the times the payments were made on the sales contracts, the appellants had no lien upon any property belonging to the insolvent corporation and had no right to the particular funds from which they received payment.

■ The trial court did not err in awarding recovery against appellants in the amount of $59.27 to cover charges for repair of Williamson's automobile, which indebtedness of Williamson to the vendor corporation was assigned to appellants on the occasion of the refinancing of the purchase of the automobile.

The repair bill in the hands of appellants was merged with the balance due on the purchase of the automobile upon which the repairs had been made and a chattel mortgage taken on the automobile to secure payment of both accounts. Appellants exercised dominion over this account, took security therefor, and there is no showing that the account has been rendered valueless or the security impaired. Neither is there any showing contrary to the court's finding that the transfer of this repair bill to appellants without consideration enabled appellants to receive a larger percentage of their just claim against the insolvent corporation than other general creditors similarly situated. The assignment is invalid as an unlawful preference under authority of *Peterson v. National Discount Corp.*, 179 Wash. 108, 35 P. (2d) 1097, 41 P. (2d) 1119.

■ The argument that respondent should have been required by the trial court to accept appellants'

offer to reassign the repair bill to respondent is without substantial merit. There is no evidence—the findings are silent on this phase of the question—that appellants obtained the consent of the account debtor to have this portion of his total indebtedness, which is now secured by chattel mortgage, reassigned to the respondent. A partial assignment of this kind can not be made without consent of the account debtor. 5 C. J. 896.

■ Appellants complain of the judgment for interest on the seven balances from the times of their respective payments and on the amount of the repair bill from the time of its assignment to the appellants. It is argued that respondent is not entitled to interest prior to the time he made his demands for payment; and that, until this action was commenced, the appellants had no knowledge that the respondent claimed appellants were indebted to respondent on any account or in any amount.

In the case at bar, there was no difficulty in determining when the various payments were made and the amount of each payment. The payment in each case was made at a specific date for a specific purpose. The claim of the insolvent corporation should be treated as liquidated from the time when its certainty is so determinable.

We held in *Dornberg v. Black Carbon Coal Co.*, 93 Wash. 682, 161 Pac. 845, that interest is allowable upon an unliquidated claim when the amount thereof can be ascertained by mere computation, and that the claim should be treated as liquidated from the time that its certainty is so determinable.

The judgment is affirmed.

BLAKE, C. J., MAIN, ROBINSON, and SIMPSON, JJ., concur.