[No. 28228. Department Two. April 24, 1941.]

PATRICK A. GERAGHTY, as *Receiver, Respondent,* v. THE
NATIONAL BANK OF COMMERCE OF SEATTLE,
*Appellant.*[1]

[1] Reported in 112 P. (2d) 846.

440

*Kerr, McCord & Carey* and *J. L. Collins,* for appellant.

*Smith, Matthews & Wilkerson,* for respondent.

SIMPSON, J.—Plaintiff, as receiver of Shef's No. 1, Inc., an insolvent corporation, instituted this action to recover the sum of $271.60 upon the ground that the sum sued for constituted an unlawful and preferential payment made to defendant by the insolvent corporation.

After the cause was at issue, it was tried to the court upon an agreed statement of facts. Thereafter, the court made its findings and entered judgment for plaintiff. The defendant has appealed. The single assignment of error is that the judgment is not supported by the findings of fact.

The pertinent portion of the agreed statement of facts contained in the stipulation presented to the court, and embodied in the findings of fact made by the court, reads:

"That prior to the four months preceding the application for the appointment of the receiver Shef's No. 1, Inc., executed installment promissory notes payable to the defendant bank, which notes, among other things, provided that the amounts thereof were 'payable at its banking house.' The application for appointment of a receiver was made on the 24th day of July, 1939, and throughout the four months immediately preceding said date of application and prior thereto, Shef's No. 1, Inc., maintained a commercial checking account, a copy of which has been introduced in evidence and marked defendant's Exhibit No. 1. That during and within the

said four months' period the balances of said notes were paid in full, namely: in the sum of $271.60, by the payments of installments on the notes as each matured. Of said total of $271.60 the sum of $153.95 was paid by said insolvent corporation by two checks drawn in the proper amounts upon said checking account and then handed to the note teller for application upon the installments then due. The balance of said total sum, namely: $117.65 was paid upon matured installments by the defendant bank directly charging said account with the amounts thereof. These charges to the account were made pursuant to the terms of the note; that the same 'were payable at the banking house' and by virtue of the consent of the insolvent corporation. That throughout all of said times the bank was without knowledge of the insolvency nor had it reasonable cause to believe that the corporation was insolvent. At all times the bank acted in utmost good faith. In fact, however, and throughout the period in which the bank received said payments, the said Shef's No. 1, Inc. was insolvent and there existed general creditors whose said claims accrued during said four months' period and which exceeded the amount of said payments and which claims remain unpaid."

Appellant argues that general deposits in a bank bring about a debtor-creditor relationship between the bank and the depositor, and that Rem. Rev. Stat., § 5831-3 [P. C. § 4532-3], subd. (a), permits a set-off of mutual debts between an insolvent corporation and its creditors.

Rem. Rev. Stat., § 5831-3, subd. (a), reads:

"In all cases of mutual debts or mutual credits between the insolvent corporation and a creditor the amount shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

Appellant's contention is that the checks against the corporation's account and the debiting of the account so as to satisfy the indebtedness of the corporation to

appellant, constituted an exercise of the right of set-off by the parties before the receivership proceedings were begun, and that this may be done under the statute quoted, the parties having acted in good faith.

Respondent, on the other hand, cites us to a number of cases antedating the enactment of Rem. Rev. Stat., § 5831-2 [P. C. § 4532-2], in which this court enunciated the trust fund doctrine relative to the assets of insolvent corporations; and then cites us to the provisions of Rem. Rev. Stat., § 5831-2, which we have interpreted as modifying the trust fund doctrine, by removing the necessity for the presence of a reasonable cause for a belief by the creditor that he is receiving a preference, only when a transfer is made to the creditor within four months before insolvency proceedings are initiated. *Meier v. Commercial Tire Co.*, 179 Wash. 449, 38 P. (2d) 383. It is the contention of respondent that to permit appellant to be paid by debiting the account of the insolvent corporation would mean that appellant would receive much more than other creditors, and that such a result violates the trust fund doctrine and the provisions of Rem. Rev. Stat., § 5831-2. Respondent urges that the good faith of appellant was of no consequence, since the debiting was done within four months prior to the initiation of receivership proceedings.

Although permitting appellant to do what was done in this case does have the effect of putting it in a much better position than other creditors, the provisions of Rem. Rev. Stat., § 5831-3, subd. (a), compel us to find that appellant acted within its rights.

There has been but one other case before this court involving this section, and in that case we held that it was inapplicable, due to the fact that there were no mutual debts or credits, the only debt running from the creditor to the insolvent corporation's receiver

having been that which arose as a result of a preference made to the creditor. *Peterson v. National Discount Corp.*, 179 Wash. 108, 35 P. (2d) 1097, 41 P. (2d) 1119.

It is true that, in *Woods v. Metropolitan Nat. Bank*, 126 Wash. 346, 218 Pac. 266, and *Jensen v. American Bank of Spokane*, 157 Wash. 240, 288 Pac. 660, we held that transactions like those which took place in the case at bar constituted voidable preferences, but those cases were decided before the enactment of Rem. Rev. Stat., § 5831-3, subd. (a).

The case of *Dunlap v. Seattle Nat. Bank*, 93 Wash. 568, 161 Pac. 364, dealt with a factual situation which was of the same nature as that with which we are now confronted, the only difference being that the suit to avoid the debiting of the accounts was brought by a trustee in bankruptcy, thereby making the provisions of the Federal bankruptcy act controlling. It should be noted, at this point, that § 68(a) of that act (11 U. S. C. A., § 108(a)) is worded like Rem. Rev. Stat., § 5831-3, subd. (a), with which we are dealing in this case. It, too, provides for the right of set-off in cases in which bankruptcy has taken place. In the *Dunlap* case we stated that the right of a bank to apply funds on deposit with it to the payment of indebtednesses due to the bank from the depositor, even though done within four months before bankruptcy, was one which arose by virtue of the provisions of § 68(a), and that the question is not any longer a debatable one, in view of the decisions by the supreme court of the United States.

*Conner v. First Nat. Bank*, 113 Wash. 662, 194 Pac. 562, also involved an action by a trustee in bankruptcy under facts similar to these, and there, too, the trustee was not permitted to set aside the debiting of the insolvent's account.

The basis for the holdings by the Federal courts to the effect that no voidable preference takes place in these cases is that, at the time the depositor makes the deposit, there is no diminution of its assets. There is simply a change in the form of the assets from cash to a credit with the bank. *New York County Nat. Bank v. Massey*, 192 U. S. 138, 48 L. Ed. 380, 24 S. Ct. 199. The theory underlying this view is that a general deposit creates a debtor-creditor relationship, making the bank the debtor of the depositor. Clearly, then, if a deposit is made in the ordinary course of business, with no intent on the part of the parties to effect a preference by indirect means, no transfer of the insolvent's property, as contemplated by preference statutes, takes place.

The only time, therefore, when a transfer actually takes place is when the account of the depositor is debited to pay the indebtedness owing by the depositor to the bank. The supreme court of the United States has held that, since § 68(a) requires that set-offs be effected after proceedings in bankruptcy are instituted, the parties may effect a set-off voluntarily before proceedings in bankruptcy are instituted. *Studley v. Boylston Nat. Bank*, 229 U. S. 523, 57 L. Ed. 1313, 33 S. Ct. 806.

It is, of course, a universally recognized rule of statutory construction that, when a statute is adopted from another jurisdiction, the judicial construction placed upon the statute by the highest courts of the jurisdiction from which it is taken is also adopted, and is considered incorporated therein, unless to do so would violate the law of the state prior to the reenactment. *West Side Irrigating Co. v. Chase*, 115 Wash. 146, 196 Pac. 666; *State v. Brunn*, 145 Wash. 435, 260 Pac. 990; *State v. Tranchell*, 164 Wash. 71, 2 P. (2d) 64.

Since Rem. Rev. Stat., § 5831-3, subd. (a), is adopted from the Federal act, the rule of construction set forth above must lead us to the conclusion that the cases interpreting § 68(a) are authority for the position taken by appellant in the case at bar.

We cannot agree with respondent that to adopt the Federal courts' view in such cases is a violation of the pre-existing law of this state, in view of the fact that the earlier cases in this state rejecting this result were decided before there was a legislative enactment giving to the creditors of insolvent corporations a right of set-off.

The basis on which the Federal cases have arrived at the conclusion that a transaction such as this gives rise to a set-off, namely, the fact that a bank deposit, made in good faith and without any intention that it operate as a payment of a preexisting indebtedness to the bank, creates a debtor-creditor relationship between the bank and the depositor, and is not a diminution of the insolvent's estate, was recognized by this court before the act was passed. *Washington Shoe Mfg. Co. v. Duke,* 126 Wash. 510, 218 Pac. 232, 37 A. L. R. 611.

Therefore, if the legislative enactment permitting a set-off of mutual debts between creditor and insolvent is to be given any effect, we must, of necessity, arrive at the same conclusion reached by the Federal courts. The fact that this result differs from the law of the state prior to the adoption of the act, is a necessary consequence of the precise and explicit language thereof, by which we are bound. Therefore, it is not the judicial interpretation of the section which differs from our preexisting state law, but the express language of the section, the Federal interpretation of which conforms to the rules of law which prevailed in this state before the act was adopted.

The judgment is therefore reversed, and the cause is remanded with instructions to dismiss the action.

ROBINSON, C. J., BEALS, and JEFFERS, JJ., concur.

MILLARD, J. (dissenting)—I can not agree that it was the intent of the legislature to provide that a set-off acquired or effected within four months prior to the application for appointment of a receiver or other liquidating officer should be allowed. No other creditor of an insolvent corporation is in a position similar to that of a bank with respect to possible set-offs or counterclaim. The ordinary creditor (as argued by counsel for respondent) of an insolvent corporation who acquires a set-off must take some affirmative action by ordering merchandise or purchasing a claim against the insolvent from some third party. In such cases the receiver of the insolvent corporation is in a position to establish that the set-off was acquired with a view to its use as a set-off if such is the case. It would be impossible to ever show that a bank acquired a deposit, which is its set-off, with a view to such use as a set-off. In the ordinary case whether the insolvent does or does not make a deposit is dependent entirely upon the will of the insolvent. No affirmative action is taken by the bank such as placing an order or dealing with a third party in acquiring its deposits.

I adopt the following convincing argument of counsel for respondent:

"If this statute is given a literal interpretation independently of the chapter of which it forms a part, it simply means that banks will not be liable for the return of preferences where their debts are paid out of checking accounts maintained with them. No other creditor of an insolvent corporation will be in such a favored position. Certainly the legislature did not intend such a result by their enactment.

"The purpose of the trust fund doctrine is to let creditors share equally and ratably such assets as an insolvent corporation has. In enacting the trust fund doctrine into statute for a period of four months prior to the application for a receiver or liquidating officer, the legislature most certainly did not intend to adopt a statute which would permit banks to obtain payment of their indebtedness to the exclusion of other creditors. Such an interpretation of the statute under consideration is unnecessary. The legislature obviously intended that set-offs acquired or effected within four months before the application for a receiver or liquidating officer should not be allowed but should be allowed prior to four months unless received with knowledge of insolvency and with a view to use as set-offs."

The judgment should be affirmed.

[1]Reported in 112 P. (2d) 850.