[No. 17882. Department One. July 19, 1923.]

## E. M. LA PLANTE, *Respondent*, v. G. M. HUBBARD, *Appellant*.[1]

SALES (143)—LOGS AND LOGGING (56)—REMEDIES OF SELLER—DAMAGES FOR REFUSING TO ACCEPT DELIVERY. The purchaser of railroad ties ready for delivery at a siding is liable in damages for the value of part of the ties which it rejected and refused to take, where they were damaged by an unreasonable delay for months in taking delivery.

CONTRACTS (104)—LOGS AND LOGGING (3)—CONSIDERATION FOR MODIFICATION. Where a contract to cut and deliver all the railroad ties on certain land was, only partly performed, an agreement to cancel the balance and relieve the purchaser from any further' claim, if he will take the ties on hand as per contract, is supported by a sufficient consideration, and is valid as a modification and termination of the first contract.

[1]Reported in 217 Pac. 20.

Appeal from a judgment of the superior court for King county, Smith, J., entered November 25, 1922, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Reversed.

*George W. Korte* and *C. H. Hanford,* for appellant.
*Wright, Kelleher, Allen & Hilen,* for respondent.

BRIDGES, J.—First of all, the appellant had a written contract with the Union Pacific Railroad Company, known as "Order-T-220," whereby the railroad agreed to purchase not less than 150,000 and not more than 350,000 hewn ties, to be delivered by November 1, following the date of the contract, which was in April, 1921. Having this contract, the appellant, on April 4, 1921, entered into the following agreement with the respondent:

"I, E. M. La Plante, party of the first part, agree to ship, and I, G. M. Hubbard, party of the second part, agree to buy, all hewn ties from the Dupont Powder Company's property in order T-220, U. P. Railway Co. Payment is to be made in full upon bill of lading, accompanied by inspector's report, at the following prices: 60c 70c, 80c, 90c, less 9c per tie, which is commission and carrying charges in full for party of the second part. This agreement to take effect on the above date and extend to November 1, 1921."

After making this contract, the respondent opened up and prepared to remove such ties as could be obtained by him from the Dupont Powder Company's property. By June 10, 1921, respondent had cut and delivered, and the appellant had accepted and paid for, a total of 11,556 ties. About that time the railroad company informed the appellant that it would not take more than 150,000 ties, that number being the minimum mentioned in its contract. This determination put the appellant in an awkward position because

he had made contracts on the assumption that he would be permitted to deliver to the railroad company a much larger number of ties. Also at that time the respondent was in a somewhat embarrassing position because his laborers, being unpaid for some of the ties they had cut, either had filed or were threatening to file liens. It was under these circumstances that, on June 9, an agreement between the appellant and respondent was incorporated in two letters, the one from the respondent to the appellant reading as follows:

"If you will make arrangements to take what ties I have made, as per our agreement on contract T-220, I will cancel the balance and release you from any further claim. I have 30,000 ties or less on hand."

On the following day the appellant by letter, accepted this proposition in the following words:

"Replying to yours of the 9th, beg to advise that I will accept your proposition in regard to taking what ties you have on hand, about 30,000, at our agreed price, and will try to arrange for shipment as soon as possible. Everybody says the O-W are hard customers to deal with and it may take sometime to convince them they will have to pay whether they take the ties or not."

As a matter of fact, there were at that time cut and on the siding, ready to be shipped and delivered, some 24,427 ties. Of this amount the appellant subsequently took and paid for 22,757. One hundred and eighteen of these ties on the landings appear to have been rejected, probably because they did not comply with the contract, and no question seems to be raised on that account, and 1,552 became so damaged by the weather that they would not pass inspection. The respondent at that time claimed, and now claims, that this damage was the result of the delay on the part of the appellant in taking the ties. Appellant having re-

fused to take them, respondent sold the 1,552 ties at a loss of $744.96. There still remained on the land in question a great deal of tie timber which respondent apparently was able and ready to cut and apply on the original contract with the appellant, but the latter refused to take any more (except a little over 6,000 taken later in the year, but which have nothing to do with the disposition of the case), and the respondent sued to recover the $744.96 mentioned on account of rotted and checked ties, and also for damages because the appellant refused to take the balance of the ties that might have been cut from the timber on the Dupont land. In this regard he claims a loss of 11c per tie, or a total of $5,390. The lower court gave him judgment for $6,134.96, the total amount of both items claimed.

We think the court was right in allowing the respondent to recover the $744.96, but in error in allowing the balance of the recovery. It will be remembered that the $744.96 was the loss on account of the rotted and checked ties which were on the landings at the time of the execution of the so-called release of June 10, 1921. It was these ties that the appellant by that agreement agreed to take. Respondent, over the objection of the appellant, offered to show by oral testimony that it was a part of the agreement of June 10 that the appellant should *at once* take the ties then on the landings. Appellant contends that this testimony was inadmissible because it tended to vary the terms of the written instrument, which did not fix any time within which the ties were to be taken. It is not necessary for us to determine whether such oral testimony was admissible. In any event, the appellant was required to take all the ties which were on the ground in June within a reasonable time, all things considered. Many of them were not taken until the October and Novem-

ber following, and it is plain from the testimony that the damage to the 1,552 ties resulted from this long and unreasonable delay, and appellant is liable therefor.

A very different situation, however, arises concerning the alleged damages resulting from the failure of the appellant to take the balance of the ties that might have been cut from the Dupont Company's land and delivered within the time and terms of the original agreement. If the agreement of June 10, sometimes spoken of as a release, means anything it means that it was the intention of the parties to annul and cancel all the terms and provisions of the original contract, except as to the ties that were then cut and on the landings, and that agreement must be controlling of the rights of the parties here, unless it is void, as contended for by the respondent, because it was not based on any consideration.

Respondent's argument is that, under the terms of the original contract, appellant was obliged to take not only the ties that he did take, but also all ties that could be manufactured from the timber in question within the time provided in the contract, and that there was, therefore, no consideration for the agreement that he would be required to take only a part of those ties. The trial court seems to have agreed with these contentions of the respondent.

We do not think it is or should be the law that any new consideration was required to make the second agreement enforceable. Every day in the business world men relieve one another from the performance of certain agreements, and it has never been thought that any new consideration was necessary to the validity of such agreements. The second agreement was a new contract, taking the place of the first, which had not

been executed by either of the parties, and the first was a sufficient consideration for the second.

In 6 R. C. L. page 923, it is said:

"It is always competent for the parties to rescind a subsisting simple contract by a naked agreement to that effect. So far as the contract remains executory, it may be said that the agreement to annul on one side may be taken as the consideration for the agreement to annul on the other side, although a consideration is necessary to release a right of action which has accrued for a breach of the contract. Though there is authority to the effect that a new consideration is essential to substitute one contract in the place of another, the correct rule is that there is a sufficient consideration when a new contract is substituted for an old one. The mutual, unexecuted undertakings of an existing contract are a sufficient consideration for the cancellation of such contract and the substitution of a new one with different terms, and it is immaterial that, for a moment during the interval, there is technically a breach of the old agreement, since by the new agreement both parties treat the old one as an existing contract, and mutually agree to a rescission of it."

See, also, to the same effect 13 C. J. 592.

In the case of *Tingley v. Fairhaven Land Co.,* 9 Wash. 34, 36 Pac. 1098, we held that a written contract for the sale of logs, providing for their delivery at the purchaser's mill, may be modified by a subsequent agreement, by the terms of which the purchaser waived delivery at the place agreed upon and accepts possession at another place, and that the subsequent agreement did not require any new consideration.

In *Dyer v. Middle Kittitas Irr. Dist.,* 25 Wash. 80, 64 Pac. 1009, we held that an agreement for the abandonment of an existing contract does not need any new or independent consideration to support it.

In *Long v. Pierce County,* 22 Wash. 330, 61 Pac. 142, quoting from another case, we said:

" 'The contract, when modified by the subsequent oral agreement, is substituted for the contract as originally made, and the original consideration attaches to and supports the modified contract.' "

In *Stofferan v. Depew*, 79 Wash. 170, 139 Pac. 1084, discussing the same subject, we said:

"Appellant first contends that the second agreement executed subsequent to the sale is void for want of consideration. It is apparent from the terms of the two agreements and the allegation of the complaint that the second agreement, as a mutual act of the parties, was made as an amendment to, or. in substitution for the original. The substitution of a new contract for an old one, in itself constitutes a. sufficient consideration."

Other of our cases might be cited in support of the same view.

Respondent, in support of his contentions, cites *Sanford v. Royal Ins. Co.*, 11 Wash. 653, 40 Pac. 609; *Seattle Lumber Co. v. Cutler*, 63. Wash. 662, 116 Pac. 1, and *Kennedy v. Spokane, Portland & Seattle R. Co.*, 73 Wash. 389, 132 Pac. 50, 46 L. R. A. (N. S.) 419. We do not think those cases are in point. The *Sanford* case goes no farther than to hold that, when the relationship of debtor and creditor exists, a release by the creditor on payment of only a part of the amount owing is not binding for lack of sufficient consideration. In the *Seattle Lumber Company* case, *supra*, it was held that the release given by a mechanic of his lien for the purpose of enabling the owner to transfer the property was void as between the parties because of want of consideration; and in the *Kennedy* case, *supra*, we held that medical services furnished to an employee will not constitute a consideration for a release of damages where the acceptance of the services did not create the relationship of debtor and creditor. We

have no doubt of the correctness of the doctrine of those cases, but it seems to us they are wholly inapplicable to the facts of this case.

But if the law were not as we have stated it, it might be argued plausibly that the mutual release of each party from the performance of the original contract was a sufficient new and independent consideration for the releasing agreement.

It is our view that the second agreement terminated the first and fixed the duties and obligations of the parties, and under it it is plain that the appellant was not legally obliged to take any ties other than those which were on the landings at the time that agreement was made. The result is that the court erred in allowing any damages in excess of the sum of $744.96. The judgment is reversed and the cause remanded with instructions to recast the judgment so that it will award the respondent damages in the last named sum only.

MAIN, C. J., MACKINTOSH, HOLCOMB, and MITCHELL, JJ., concur.