[No. 32655. Department Two. September 21, 1954.]

WALSH SERVICES, INCORPORATED, *Appellant,* v. RICHARD J. FEEK *et al., Respondents.*[1]

*Ferguson & Burdell* and *Donald McL. Davidson,* for appellant.

[1] Reported in 274 P. (2d) 117.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *Willard E. Skeel,* for respondents.

SCHWELLENBACH, J.—Respondents purchased an eighteen-year-old home in Seattle, in October, 1951. They desired to have it redecorated and remodeled before they moved into it. Mr. Feek consulted his friend, Roy Walsh, who stated that his company (the appellant) was engaged in that type of work. On two or three occasions, Walsh's son, Eugene, went over the house, room by room, with Mrs. Feek.

November 7, 1951, Gene Walsh prepared and delivered to respondents a letter setting forth in detail the several items of work to be done and an estimate of the costs. The total estimate of costs to the Feeks, including tax, was $4,-592.98. The letter stated:

"WALSH SERVICES, INC.
November 7, 1951

"Mr. Richard J. Feek
1641 Windermere Drive
Seattle, Wash.
"Dear Sir:

"We submit herewith an estimate for the following listed repairs and decorating of your residence at the above address. This is necessarily an estimate because of the uncertainties of job finish conditions, types of materials, etc. The job will be done on a cost plus basis which will be the fairest for both parties.

"1. Living room:
Remove side lites and wall plugs in center of wall—repair plaster where removed and cracked.
Remove venetians and spot holes in hardwood.
Repaint 2 coats.

"2. Dining room:
Repair weather stripping on doors.
Remove wall fixtures and patch.
Paint complete 2 coats.

"3. Den:
Remove fixture, remove venetians.
Repair plaster.
Paint ceilings.

"4. Master bedroom and dressing room:
Remove venetians and wall fixtures.
Stipple walls and paint 1 coat.
Paint complete woodwork.
Build in corner dressing table—furnish glass top.

"5. Master bathroom:
 Repair tile.
 Paint 2 coats.

"6. Guest room:
 Remove venetians—patch cracks.
 Paint complete 2 coats.

"7. Wing hallway:
 Paint complete 2 coats.

"8. Girl's room:
 Paint complete 2 coats.
 Remove venetians—patch cracks.

"9. Childrens' bathroom:
 Repair plaster.
 Paint complete 2 coats.

"10. Mother's room:
 Paint complete 2 coats.
 Remove venetians—patch cracks.

"11. Back hall—upper and lower—and 2 closets:
 Paper walls.
 Paint ceilings and closets 2 coats.
 Cover fir floor with asphalt tile.
 Cover stair treads with asphalt tile and rubber bullnose.
 Remove pickets lower rails and rehang hand rail.
 Paint woodwork 2 coats.

"12. Ace's room and bath:
 Fill below tub.
 Asphalt tile floors.
 Paint complete 2 coats.
 Apply chair rail.
 Paper above chair rail.
 Build in shoe rack in closet on sliding bars.
 Build additional shelves in closet.

"13. Powder room—lower hall:
 Paper walls
 Paint ceiling and woodwork 2 coats.

"14. Stairs to basement and lower hall:
 Paint complete 2 coats.
 Apply rubber treads and asphalt tile to floor and stairs.

"15. Spray paint fruit room, laundry room and furnace room, and storage room—1 coat cold water white.

"16. Recreation room:
 Paint ceiling 2 coats.
 Apply asphalt tile to floor.
 Clean and varnish wood 1 coat.

"17. Garage:
 Paint complete 1 coat oil base flat paint.

"18. Kitchen and breakfast nook:
 Install Thermodor stove, 2 ovens (supplied by you).
 Install dishwasher (supplied by you).
 Install new base cabinets and sink.

Install new upper cabinets and hood over stove and oven area. (*Contractor to furnish detail plan sketch on kitchen before starting the work on kitchen*).

Install new floor linoleum on entire area.

Install plastic linoleum drainboards and back splasher.

Cut out wall between breakfast area and kitchen to make service bar.

*Modernize pantry cabinet doors.*

Modernize all old kitchen cupboard doors left.

Paint complete 2 coats old work—*3 coats new work.*

Lower ceiling—install fan.

"19. Install new lite fixtures thruout except hall (allowance of $210.00 made for these fixtures).

"20. All hardwood woodwork to be washed only.

| | |
|---|---|
| | $4,459.20 |
| Tax | 133.78 |
| Total | $4,592.98 |

"All colors are to be selected by you. All materials are to be W. P. Fuller's best grade, or equal.

"All work is to be performed under Union conditions and is to be completed as soon as possible, consistent with good workmanship.

> "Sincerely,
> "WALSH SERVICES, INC.
> "[signed] Gene E. Walsh.
> "GENE E. WALSH"

Respondents accepted this offer, and appellant commenced the work. During the course of the work, Mrs. Feek spent considerable time at the house. When the work was substantially completed, Gene Walsh presented to Mrs. Feek appellant's bill, showing a total charge of $9,174.02, less $3,000 which had been paid on account. At the time of presenting the bill to Mrs. Feek, Gene remarked, "Dick will blow his top when he sees it." The trial judge, in his oral opinion, stated that Gene was a better prognosticator than he was an estimator. During the progress of the work, the Feeks asked Walsh at various times if he was staying within his estimate. His answers were evasive, but he led them to believe that there would be very little difference.

Respondents demanded an explanation of the overcharge, and Mr. Gene Walsh replied by letter that the change in price from the estimate to the final billing was principally

caused by the changes from the original plans of work outlined to the final work as performed. When respondents refused to pay the bill, appellant filed a lien on the property. After several meetings, at which the parties were represented by counsel, appellant brought this action to foreclose the lien.

The complaint alleged that, pursuant to a contract, plaintiff commenced performing labor and furnishing materials in connection with the remodeling of the residence; that, during the performance of said labor and the furnishing of said materials, the contract was modified by agreement between the parties in that several itemized extras were added; that certain itemized subtractions were made from the contract; that the performance of said labor and the furnishing of said materials were of the value of $9,174.02, of which $3,000 had been paid on account; that notice of claim of lien was duly executed and filed; and that $6,174.02 is the amount due and unpaid on the aforesaid obligation. The prayer was for judgment in said sum, together with interest and attorneys' fees.

Defendants answered, admitting the contract dated November 7, 1951, and admitting that the contract was modified, but not to the extent pleaded. As affirmative defenses, they alleged that charges were excessive, arbitrary, and not in accordance with the usual custom and practice in the city of Seattle; that the labor performed and materials furnished were poor and inadequate and not up to the usual standard of workmanship as called for in said contract; that the amount properly due and owing is the sum of $1,592.98, which has heretofore been offered to plaintiff in settlement of this dispute. Defendants deposited $1,592.98 with the registry of the court and prayed that plaintiff not be awarded any costs or attorneys' fees. During the course of the trial, respondents admitted that an additional $389.56 was owing, which sum they paid to the clerk of the court.

The trial court found that the letter was in the nature of a cost-plus contract; that the respondents were constantly assured during the progress of the work that the charges

would be very close to the original estimate; that the contract was modified in that certain extras were added; that defendants were not advised, as the work progressed, that plaintiff intended to make charges for extras; that the work was not given adequate or proper supervision and, as a result, the number of labor hours charged for the job was excessive by at least fifty per cent; that charges for certain work and material were excessive, and that certain work was poorly and inadequately done and would have to be redone; and that plaintiff was not entitled to a reasonable attorneys' fee. Judgment was entered for appellant in the amount of $1,982.54, which was the amount of funds on deposit with the registry of the court.

Appellant assigns error to the refusal of the trial court to enter judgment in its behalf in the sum of $9,174.02, plus attorneys' fees and costs. The contention is also made that the findings of fact are not supported by the evidence.

The trial court based its decision primarily on the testimony of Tennys Bellamy, an architect of many years experience in the construction, repair, and remodeling of buildings and houses. Mr. Bellamy made a thorough examination of all of the work done. He based his testimony on that examination, the original estimate, the invoice for $9,174.02, less $3,000 paid, a recap sheet of the work done (including extras), job sheets showing labor and material, and a deposition given by Gene Walsh, which had a breakdown of each item and the amount charged therefor. He took the original estimate and added the extras which were authorized. He also added certain extras which were reasonable and necessary, although not specifically authorized. He rejected several items which were neither necessary nor authorized. He found a considerable portion of the work to be defective. He found the charge for labor to be exorbitant. Appellant, in its invoice, listed: carpenters, 612 hours; painters, 805 hours; helpers and apprentices, 48 hours; plumbing, electrical work, and miscellaneous, 300 hours; or a total of 1,765 hours. Bellamy testified that the work could have been properly performed with carpenters, 300 hours; painters,

400 hours; helpers, 25 hours; plumbing, electrical work and miscellaneous, 150 hours, or a total of 875 hours.

Most of the work was done in the kitchen. The contractor originally estimated that this would cost $1,235. To this Bellamy added $1,032.38 for extras, making a total of $2,-267.38 for the kitchen. He testified that the reasonable charge for extras in the rest of the house would be $554.66. From that amount he deducted $463.02, credits allowed by the contractor, making the net allowance for extras in the rest of the house $91.64. To this amount he added $2,623.52, the original estimate for the rest of the house after deducting certain work which had not been performed, making a total of $2,715.16 for the rest of the house, or a total of $4,-982.54 for the entire job.

This is the amount found by the trial court. It saw and heard the witnesses and believed Bellamy. As to the exorbitant number of hours charged to labor, the judge did not find this due to padding, but to lack of supervision.

In the case of *Shaw v. Bula Cannon Shops, Inc.*, 205 Miss. 458, 38 So. (2d) 916, plaintiffs contracted to remodel two store buildings for the defendant on a "cost plus ten plus ten" contract. Defendant refused to pay the bill, contending that the plaintiffs had conducted the work in a negligent, careless, and unbusinesslike manner, with inadequate supervision, duplicating effort and paying improper prices. A contractor, a contract estimator, and an architect were called as witnesses to testify to the quality of the work. The court said:

"The rules of law controlling 'cost plus' contracts are well established. Upon reason and authority, where a person agrees to do work for another upon a cost plus basis, it is his duty to keep accurate and corrrect accounts of all material used and labor performed, with the names of the materialmen and laborers, so that the owner may check up the same. He must use the same skill and ability as is used in contract work for a gross sum. If the aggregate cost upon the face of the account is so excessive and unreasonable as to suggest gross negligence or fraud, the law would impose upon the contractor the duty of establishing the bona fides of his performance of the work. The contractor does not

have the right to expend any amount of money he may see fit upon the work, regardless of the propriety, necessity, or honesty of the expenditure, and then compel repayment by the other party, who has confided in his integrity, ability and industry. *Hitt v. Smallwood*, 147 Va. 778, 133 S. E. 503; *Title Guarantee & Trust Co. v. Pam, Sup.*, 155 N. Y. S. 333, affirmed 192 App. Div. 268, 182 N. Y. S. 824, affirmed 232 N. Y. 441, 134 N. E. 525. In an action upon his contract for payment, the contractor must show that the moneys which he claims to have expended were necessarily paid for materials and work upon the job and if the contractor fails to do this he should only be allowed the reasonable cost and his percentage. *Pathe Laboratories v. Du Pont Film Mfg. Corporation*, D. C., 3 F. R. D. 11."

Mr. Walsh testified that "cost plus" in the Seattle area is eighteen per cent of labor for general overhead, thirty-two per cent of labor for job expense, and ten per cent of labor for profit, plus fifteen per cent of cost of materials for material profit. We express no opinion as to the reasonableness of this charge. Mr. Walsh, however, was generous with the Feeks. He charged only forty per cent of labor for general overhead and job expense, plus ten per cent for profit. The original estimate did not particularize the amount of cost plus as to any of the items. "Cost plus" was never explained to the Feeks. There is no question, however, that the original estimate of $4,592.98 included cost plus. The amount of $4,592.98 was the estimated cost to the Feeks.

Appellant complains that Mr. Bellamy did not take cost plus into consideration in figuring the cost of the work. He calls our attention to the following testimony:

"Q. Well, I'll ask you this: In reaching your determination as to what Walsh should receive did you figure in any percentages for overhead, job expense or profit? A. No."

However, the record does disclose that Mr. Bellamy did consider cost plus. He testified:

"A. Drop down to Item 3, Den, Hang two doors, Trim doors for carpets and rehang, two items of cost, a total of $60.00. It seems to me that $60.00 even at $4.00 per hour, which is roughly what this total charge is being made, which is $3.63 plus the 10 per cent overhead roughly is $4.00, that

would make about fifteen hours of time of one man or roughly two days, and I can hardly conceive by any stretch of the imagination of one man spending two days to remove two inserted blocks, which are known to the trade as dutchmen, because the blocks of wood were placed where some former hinges at one time did occupy the space, remove those blocks, which is just a matter of prying them out with a chisel, and then obtaining the doors which were stored on the premises and sawing them off probably at the place where they were stored or nearby, and hanging them. Q. What in your opinion is a reasonable charge for that? A. I would say $10.00 would be plenty, and that's about two hours and a half time for one man for just two doors. It gives over an hour on each door."

Following that, he stated that an item, trim doors for carpets, would reasonably cost $12, instead of $32, in that the work would only take three hours. That was at $4 per hour. The union rate for carpenters was $2.42 per hour.

Appellant's bill to the Feeks contained the following:

| "612 hrs. carpenters $3.63 | |
|---|---|
| inc. O. H., job exp. and 10% profit | $2,221.56 |
| 805 hrs. painters $3.56 | |
| inc. O.H., job exp. and 10% profit | 2,865.80 |
| 48 hrs. helpers & appren. $1.88 inc. O.H., job | |
| exp., and 10% profit | 90.24 |
| 300 hrs. wall tile, plumbing, electrical & misc., | |
| $3.75 inc. O.H., job exp., and 10% profit | 1,125.00 |
| Materials and subcontracting, including lite fixtures, | |
| hardware, bathroom fixtures as furnished by us.......... | 2,604.22" |

At that time, the union rate per hour for carpenters was $2.42; for painters, $2.37½; for apprentices, $1.33; and for general utility men, $2.42. Using the same rate for cost plus that appellant used, the rate for carpenters would be $3.63; for painters, $3.56; for apprentices, $1.88; and for utility men, $3.63. Taking the number of hours found by Bellamy (and approved by the court), the total for carpenters would have been $1,089; for painters, $1,424; for apprentices, $47; and for plumbing, electrical and miscellaneous, $544.50, or a total of $3,104.50. Adding to this the charge for materials and subcontracting of $2,604.22, it totals $5,708.72. Deducting from this the sum of $688, which appellant conceded would be necessary to correct the deficiencies in the work,

the total charge for the job would be $5,040.72. Obviously, cost plus was considered by Mr. Bellamy and the trial court in arriving at the result which they reached.

The trial consumed six and one-half days of actual trial. The trial judge followed the testimony by having before him the original estimate, the invoice, the recap sheet, and the job sheets. He took notes as to each item testified to by the witnesses. His notes total two hundred seventy pages. He was thoroughly familiar with all phases of the work done. He saw and heard the witnesses. The evidence does not preponderate against his findings.

Appellant complains because of the trial court's refusal to allow attorney fees.

RCW 60.04.130 provides in part:

"The court may allow, as part of the costs, the filing or recording fees of the claimant, and a reasonable attorney's fee in the superior and supreme courts."

The statute does not require the court to award an attorney's fee in a case of this kind. The court *may* award such a fee. Clearly, the award of attorney's fees is a matter of discretion. The case of *Hughes & Co. v. Flint*, 61 Wash. 460, 112 Pac. 633, held that it was not an abuse of discretion to deny attorney's fees in an action to foreclose a mechanic's lien where tender of all sums that could be charged against the property was made before trial. True, the additional sum of $389.56 was not tendered until after the trial started. Considering all of the ramifications of this case, we cannot say that it was an abuse of discretion for the court to deny attorney's fees.

The judgment is affirmed.

GRADY, C. J., HILL, DONWORTH, and WEAVER, JJ., concur.