[No. 37669.   Department Two.   May 6, 1965.]

THE BROWER COMPANY, *Appellant*, v. NOISE CONTROL OF
SEATTLE, INC., *et al.*, *Respondents*.*

*Reported in 401 P.2d 860.

*Lycette, Diamond & Sylvester*, by *John P. Lycette, Jr.*, for appellant.

*Miracle, Treadwell & Pruzan*, for respondent Jonson.

*Donald E. Spickard* and *Bruce Maines*, for respondents Seattle-First National Bank and General Insurance Company of America.

BARNETT, J.†—This appeal involves an action brought by the plaintiff (appellant) on a building contract to collect the entire contract balance due, coupled with an action to foreclose the lien on the real property upon which the labor and materials were furnished in the performance of a sub-contract. Also involved is an alternate action by the plaintiff to collect the amount earned under the subcontract against a performance and payment bond executed by the defendant (respondent) General Insurance Company of America (hereinafter referred to as General Insurance). An additional feature of this case concerns itself with the garnishment by plaintiff of certain sums of money which were due and owing to the defendant (respondent) Noise Control of Seattle, Inc. (hereinafter referred to as Noise Control). Plaintiff and defendants are corporations authorized to do business in this state.

The defendant (respondent) Seattle-First National Bank (hereinafter referred to as Seattle-First) and Sound Construction & Engineering Company (hereinafter referred to as Sound Construction) on January 30, 1962, entered into a contract for the construction of a structure known as a data processing center in Seattle. On February 8, 1962,

---

†Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to art. 4, § 2(a) (amendment 38), state constitution.

Sound Construction entered into a subcontract with defendant Noise Control for the completion of certain work on the data processing center. The subcontract called for Noise Control to do certain lath and plaster, acoustical, marblecrate, rigid insulation and cemesto panels. On March 2, 1962, Noise Control entered into a sub-subcontract with the plaintiff, The Brower Company, to perform certain work called for under the subcontract of February 8, 1962, entered into between Sound Construction and Noise Control.

Plaintiff performed all of the work called for under its agreement. The agreed price for the work was $19,350. In addition to the work called for under the sub-subcontract, plaintiff performed certain extra work amounting to $414.50, making a total of $19,764.50 due plaintiff. The Superior Court of King County found that the reasonable value of the labor performed on the job was $7,968.80 and the reasonable value of the materials supplied was $11,795.70.

A notice of claim of lien was filed by plaintiff on November 15, 1962, with the Auditor of King County, covering the real property upon which the data processing center was being built for Seattle-First. The lien was filed within 90 days of the last delivery of materials and performance of work. Plaintiff commenced furnishing materials on April 5, 1962. The last day labor and materials were performed and supplied was October 23, 1962. Notice was sent by registered mail on October 29, 1962, to Sound Construction, Seattle-First, and General Insurance that materials were being supplied. However, no materialman's notice pursuant to RCW 60.04.020 had previously been mailed.

General Insurance executed a performance and payment bond as surety with Noise Control as principal on February 16, 1962. The bond provided for the payment to all persons supplying labor and materials and other obligations incurred by the principal in the event of default by Noise Control. On October 19, 1962, Noise Control appointed Ernest A. Jonson as liquidating trustee. This was done pursuant to an action by two thirds of the stockholders of Noise Control and not pursuant to a court order. The effective date of the appointment was October 22, 1962, when the

stockholders' resolution was filed with the Secretary of State and the Auditor of King County. Noise Control was insolvent at that time.

Sound Construction was garnished on January 8, 1963, and it answered that there was an unexpended balance due Noise Control of $11,622.24. Of this amount, the court directed that $7,968.80 be treated as funds paid by Sound Construction into court on behalf of Seattle-First and the balance of $3,653.44 be received by the liquidating trustee.

On March 28, 1963, a writ of garnishment was issued against Cawdrey and Vemo, Inc., and it answered owing $45,922.50 to Noise Control. The trial court held that the plaintiff was not entitled to garnish this amount and it is now in the custody of the liquidating trustee.

The court granted a recovery to plaintiff against Ernest A. Jonson, as liquidating trustee for Noise Control, in the sum of $19,764.50, and also ordered foreclosure of appellant's lien in the amount of the labor performed on the subcontract, $7,968.80, part of the garnished amount owing to Noise Control from Sound Construction. The court denied foreclosure of the lien as to the part of the subcontract attributable to materials that were supplied, and denied recovery by the plaintiff against General Insurance based upon the second alternate cause of action. No interest, attorneys' fees or costs were granted to the plaintiff against Seattle-First.

Assignments of error present questions which we will discuss in the order they were raised.

The first assignment of error concerns the trial court's disallowance of the lien for materials supplied.

Appellant failed to file with the owner a notice of intention to claim a lien for materials within 60 days of the furnishing of the first materials to the job. Is appellant entitled to a lien? Appellant contends that a reading of RCW 60.04.010, 020, 130 together eliminates the requirement of notice for furnishing materials.

Appellant's position is that a subcontractor has a lien for his contract price and does not have to give notice to

enforce his lien as to the materials thereof and that any Washington cases to the contrary should be overruled.

■ However, this court, in the following cases, has construed the statutes contrary to appellant's contention: *Heim v. Elliott*, 66 Wash. 361, 119 Pac. 826; *Hallett v. Phillips*, 73 Wash. 457, 132 Pac. 51; *Hayes v. Gwinn*, 49 Wn.2d 908, 307 P.2d 1063. We adhere to those decisions. The legislature has not changed the statutes since those decisions were rendered. In not so doing, we think it has acquiesced in our interpretation of them.

■ The second assignment of error raises the question of whether the appellant has a right of action against General Insurance by virtue of the performance and payment bond executed by them, wherein Noise Control was the principal. The bond provided for the payment to all persons supplying labor and materials and other obligations incurred by the principal in the event of default by Noise Control. The bond of the subcontractor expresses no intention that persons in appellant's position should have a right to sue on the bond. Appellant argues that, even though the owner is the only obligee in the bond and even though there is no provision that it shall inure to the benefit of laborers or materialmen, they may avail themselves of the security thereof. This court, however, has ruled that a third party supplier of labor and material has no right against a common law bond on private construction unless the terms of the bond expressly give that right.

See *Armour & Co. v. Western Constr. Co.*, 36 Wash. 529, 78 Pac. 1106; *Spokane Merchants Ass'n v. Pacific Sur. Co.*, 86 Wash. 489, 150 Pac. 1054; *Rust v. United States Fid. & Guar. Co.*, 87 Wash. 93, 151 Pac. 248; *DuPont DeNemours Powder Co. v. National Sur. Co.*, 90 Wash. 227, 155 Pac. 1050; *Forsyth v. New York Indem. Co.*, 159 Wash. 318, 293 Pac. 284; *Boise Cascade Corp. v. Pence*, 64 Wn.2d 798, 394 P.2d 359.

We reiterated the third party beneficiary rule in this state in *Priestley v. Peterson*, 19 Wn.2d 820, 838, 145 P.2d 253:

In the case of *Pacific Mercantile Agency v. First Nat. Bank,* 187 Wash. 149, 60 P. (2d) 6, we said:

"Before a third party can recover upon a contract made for his benefit and to which he is not a party, it must appear to have been the intention of the parties to secure to him personally the benefit of the provisions of the contract.

"Contracts which only create a general obligation to pay the costs of performing a particular undertaking do not show an intention to make such contract for the benefit of a third person who may have furnished materials necessary to the performance thereof."

The trial court's ruling was in conformity with the above decisions to which we adhere.

By assignments of error No. 3 and No. 4, the right to costs, interest, and attorneys' fees is asserted. The appellant permitted the inspection of its records to determine the breakdown between labor and material, but it refused to make this breakdown itself. Seattle-First was willing to pay the labor lien at all times before suit. The duty of making the breakdown was that of appellant.

The allowance of attorneys' fees and costs is discretionary. The pertinent parts of RCW 60.04.130 read: "The court may allow . . . costs . . . and a reasonable attorney's fee . . . ."

Under the circumstances of this case, the trial court did not abuse its discretion in not allowing attorneys' fees and costs. See *Hughes Co. v. Flint,* 61 Wash. 460, 112 Pac. 633; *Walsh Services, Inc. v. Feek,* 45 Wn.2d 289, 274 P.2d 117; *Forrester v. Craddock,* 51 Wn.2d 315, 317 P.2d 1077.

The granting of or the failure to grant interest presents a different problem from the statutory discretionary power available to the trial court in the granting of costs and attorneys' fees. The statute does not provide for the payment of interest. There are, however, numerous cases in this jurisdiction holding that, on foreclosure of a lien, interest is allowable from the date of filing the notice of lien. *Huetter v. Redhead,* 31 Wash. 320, 71 Pac. 1016; *Cornelius v. Washington Steam Laundry,* 52 Wash. 272, 100 Pac. 727; *Brace & Hergert Mill Co. v. Burbank,* 87 Wash. 356, 151

Pac. 803; *Siler Mill Co. v. Charles Nelson Co.,* 94 Wash. 477, 162 Pac. 590; *United States Fid. & Guar. Co. v. E. I. Dupont DeNemours & Co.,* 197 Wash. 569, 85 P.2d 1085; *Standard Lbr. Co. v. Fields,* 29 Wn.2d 327, 187 P.2d 283, 175 A.L.R. 309; *Willett v. Davis,* 30 Wn.2d 622, 193 P.2d 321.

In view of these cases, it is our opinion that the trial court was in error in not allowing interest on the labor lien from the date of filing the notice of lien until the time the money was deposited into court.

The issue raised by assignment of error No. 5 is, does plaintiff have a right to garnish Cawdrey and Vemo, Inc., and/or Sound Construction and thereby obtain the funds that would become part of the estate of the liquidating trustee.

The trial court held that the appellant was not entitled to garnish and satisfy its claim from funds due Noise Control and/or Ernest A. Jonson, the liquidating trustee of Noise Control, held by Sound Construction and Cawdrey and Vemo, Inc.

Let us examine each of these funds separately. To begin with, it is remembered that no controversy exists as to $7,968.80 of the $11,622.24 which Sound Construction had owing to Noise Control. The fund was paid into court by Sound Construction, $7,968.80 to be regarded as payment of the judgment entered in favor of appellant against Seattle-First and the balance of $3,653.44 to be received by the liquidating trustee. The liquidating trustee does not argue with the disposition of $7,968.80 because he concedes that this amount represents the basis of a valid labor lien. However, appellant's contention as to the remaining $3,653.44 is opposed by the liquidating trustee on the grounds that the garnishment would constitute an unlawful preference since that part of the fund could not form the basis of a valid lien and did not constitute trust funds. We agree. Washington statutes provide that funds received by a contractor in payment of labor or materials supplied by others are to be held in trust for such others in those instances where the labor or materials may be lawfully lienable. RCW 9.54.080.

The purpose of this statute is to protect the owner of property which may be subject to a valid lien. This trust relationship is limited to instances in which a lien ". . . might lawfully be filed upon the property of another . . . ."

This situation was covered in *Seattle Ass'n of Credit Men v. Daniels*, 15 Wn.2d 393, 130 P.2d 892, where we held that an assignee for the benefit of creditors is entitled to interpose the failure to give notice of the furnishing of materials to the owner as a defense to the assertion of an enforceable lien in a preference action.

■ In the present case, there was no possibility of a valid materialman's lien because of failure to comply with the statute and the lapse of the statutory period within which to give notice. In the absence of a valid lien, or the possibility of a valid lien, appellant is not entitled to a garnishment of the fund remaining from Sound Construction.

Appellant admits that it is not entitled to garnish the fund held by Cawdrey and Vemo, Inc., if it is the property of the liquidating trustee. The liquidating trustee maintains that the fund of $45,000 owing from Cawdrey and Vemo, Inc., is the property of the liquidating trustee and is not subject to garnishment by the appellant. The liquidating trustee claims that the fund due Noise Control, being an asset of the liquidating trustee, is not subject to garnishment proceedings and that the perfecting of a lien against the fund would effect an unlawful preference to the appellant. Jonson has been acting as liquidating trustee of Noise Control since October 22, 1962. Appellant did not serve its writ of garnishment until March 28, 1963. We are faced with the question of whether a creditor may, by writ of garnishment, obtain a valid lien upon the property of a debtor corporation subsequent to the appointment of a liquidating trustee.

The Washington Business Corporation Act relates to functions and powers of a liquidating trustee in a voluntary corporate dissolution. Pertinent parts of that legislation follow:

RCW 23.01.560:

The trustee or trustees appointed by the shareholders to conduct a winding up out of court, as speedily as possible after his or their appointment has become operative shall proceed:

(1) To collect all sums due or owing to the corporation;

(2) To sell and convert into cash such corporate assets as are not to be distributed in kind to the shareholders;

. . . .

(4) To pay or adequately provide for all debts and liabilities of the corporation according to their respective priorities.

RCW 23.01.580:

(2) Trustees or receivers in dissolution proceedings shall have full authority to compromise, compound and settle claims by or against the corporation upon such terms as they shall deem best; . . . .

RCW 23.01.600:

(1) A proceeding for dissolution shall be deemed to commence

(a) at the time of the passage of the resolution therefor, if the proceeding is out of court;

. . . .

(2) When a proceeding for dissolution has commenced,

(a) the authority and duties of the directors and officers of the corporation shall cease, except insofar as may be necessary to preserve the corporate assets, or insofar as they may be continued by the trustee or receiver, or as may be necessary for the calling of meetings of shareholders; . . . .

This court and the Federal District Court for the Western District of Washington have had occasion to consider some of the above statutes and their predecessor statutes. *Deer Park Pine Indus., Inc. v. Stevens Cy.*, 46 Wn.2d 852, 286 P.2d 98; *The Doric Co. v. King Cy.*, 57 Wn.2d 640, 358 P.2d 972; *Denman v. Richardson*, 284 Fed. 592; *In re Golden Rule Trading Co.*, 17 F. Supp. 21.

A statement in *Doric, supra*, p. 644, expresses the view of these cases as to the power and duties of the liquidating trustee:

Among other things, the statute setting forth duties of the trustee . . . directs the trustee in dissolution to collect all sums due the corporation, sell and convert into cash such corporate assets as are not to be distributed in kind to the stockholders, and pay or adequately provide for all debts and liabilities of the corporation; . . . .

Judge Neterer in *Denman, supra,* p. 593, discussed the dissolution of a corporation and compared it with the appointment of a receiver:

When, however, a corporation ceases to be a going concern and a receiver is appointed, all rights of the corporation vest in the receiver. Porter v. Sabin, 149 U. S. 475, 13 Sup. Ct. 1008, 37 L. Ed. 815. By the same token upon the dissolution of a corporation, the trustees at the time of the dissolution shall be trustees of the creditors and stockholders (section 3707, Rem. & Bal. Code), "and shall have full power and authority to sue for and recover the debts and property of the corporation." Upon dissolution of the corporation, the corporate entity ceased. The corporation has no power to sue. All rights of the corporation are ended, and the property and funds of the corporation are vested in the trustees for the stockholders.

It is obvious, therefore, that the powers and duties of a liquidating trustee would be unduly frustrated if individual creditors could disregard the dissolution proceedings and maintain legal proceedings against the corporation as though no change in its status had occurred.

It is stated in 10 Fletcher, Cyclopedia of Corporations § 4785, p. 152 (Perm. ed.):

The general rule is that a creditor cannot attach corporate property after dissolution.

This rule commends itself to us as being sound in logic and in practice. It is clear, therefore, that the money owing Noise Control by Cawdrey and Vemo, Inc., which is now in the custody of the liquidating trustee, is immune from garnishment.

The liquidating trustee also contends, and we agree, that the allowance of the garnishment in this instance would effect an unlawful preference in favor of one creditor

over the other creditors of the insolvent corporation. RCW 23.72.010 in conjunction with RCW 23.72.030 and the Washington Business Corporation Act make it plain that the liquidating trustee of an insolvent corporation is empowered to void preferences occurring within 4 months of his appointment. A preference occurring subsequent to his appointment is, of course, equally voidable by him. Since an account receivable is an asset of a corporation, the transfer of cash derived from such an account by judicial process to one of the creditors of the corporation would both diminish the estate of the corporation and enable that creditor to obtain a greater percentage of his debt than other creditors of the same class and would constitute an unlawful preference. See *Seattle Ass'n of Credit Men v. Bank of California Nat'l Ass'n*, 177 Wash. 130, 30 P.2d 972; *Peterson v. National Discount Corp.*, 179 Wash. 108, 35 P.2d 1097.

The judgment is modified by the allowance of interest on the labor lien from the date of filing of notice of the lien until deposit of the fund into court.

As so modified, the judgment is affirmed.

ROSELLINI, C. J., WEAVER, HUNTER, and HAMILTON, JJ., concur.