[No. 42840.    En Banc.    January 3, 1974.]

LEO J. ROSELLINI, JR., *Petitioner*, v. EDWARD BANCHERO *et al.*, *Respondents.*

*Ferguson & Burdell,* by *James E. Hurt,* for petitioner.

*Jerry T. Haggarty,* for respondents.

BRACHTENBACH, J.—Plaintiff, a contractor, and defendant, a property owner, entered into an oral contract in June 1969, for the construction of a building for defendant. The work was to be done on a time and materials basis, but with a maximum cost of $56,146, plus sales tax, plus extras as ordered by defendant. A unique feature was that any reduction in cost below that estimated in plaintiff's bid, such as lower subcontract costs, would accrue to defendant's benefit. In short, all savings benefited defendant, while plaintiff ran the risk of costs exceeding the ceiling.

Construction began and plaintiff submitted invoices for labor, materials and subcontractors which totaled $28,412.83 by September 9, 1969. Defendant promptly paid these without question. On October 15, 1969, plaintiff submitted an invoice of $16,719.65. At this point the building was about 90 percent completed. The defendant contended that at that point he was unhappy with the whole job, that he was concerned about possible liens, that plaintiff's workers "just weren't doing the work" and "the thing wasn't just being run right and something may happen." On October 17, 1969, the parties signed a written agreement lowering the maximum cost to $52,000 plus sales tax.

The building was completed less than three weeks after the October 17th contract was signed. Plaintiff's actual cost was $64,155.79. Plaintiff, after disputes with defendant as to the balance due, recorded a lien and began a foreclosure suit.

The trial court held that the October 17th contract was void for want of consideration and because it was signed under duress. Therefore, the original ceiling was control-

ling. The court found payment of $2,265.91 was due for extras. The original maximum, plus extras, plus sales tax totaled $61,040.45. Defendant had paid $51,437.42 so the court awarded the plaintiff a judgment of $9,603.03, plus $1,500 attorney's fees under the lien foreclosure statute, plus interest from the due date of the last invoice and plaintiff's costs.

The Court of Appeals reversed on the grounds that there was consideration and that there was no duress or business compulsion. It also reversed the award of attorney's fees and directed that interest should run from the date of judgment. *Rosellini v. Banchero*, 8 Wn. App. 383, 506 P.2d 866 (1973).

In finding that there was consideration for the October 17th contract, the Court of Appeals relied on the principle that the settlement of a bona fide dispute or a doubtful claim, if made in good faith, is sufficient consideration for the compromise. *Rogich v. Dressel*, 45 Wn.2d 829, 843, 278 P.2d 367 (1954). The trial court made no finding as to the existence of a bona fide dispute or a doubtful claim. The court did find that defendant's dissatisfaction with job progress and the amount paid to that time caused defendant to initiate the October 17th contract. There is substantial evidence that defendant had no dispute with specific items of the plaintiff's progress billings, but rather a general dissatisfaction that "the thing wasn't just being run right." In fact after plaintiff signed the October 17th contract, defendant immediately paid the October 15th voucher. It is apparent that there was no bona fide dispute or doubtful claim; indeed that is implicit in the court's finding of a lack of consideration.

The part that consideration plays in determining the validity of so-called modification contracts is in a state of confusion in Washington. Professor Shattuck characterizes our cases on this point as "a tangle of diverse language and results." Shattuck, *Contracts in Washington 1937-1957*, 34 Wash. L. Rev. 24, 57 (1959). As will be demonstrated and as outlined by Professor Shattuck, this court has adopted

diametrically opposed principles in this area of contract law, with conflicting results which cannot be reconciled.

In one line of cases we start with *Tingley v. Fairhaven Land Co.*, 9 Wash. 34, 39, 36 P. 1098 (1894), where there was legal consideration flowing from the agreement to change the delivery point of logs and reduce the price, yet the court added that the modification was enforceable "without the actual payment of any consideration." This error was expanded in *Long v. Pierce County*, 22 Wash. 330, 348, 61 P. 142 (1900), where the court said:

> But no express or independent consideration was necessary. "The contract, when modified by the subsequent oral agreement, is substituted for the contract as originally made, and the original consideration attaches to and supports the modified contract."

(Citations omitted.) Again, the result was correct, but for the wrong reason; the case actually involved waiver of an express condition which does not require a new contract.

This erroneous reasoning came to full bloom in *Stofferan v. Depew*, 79 Wash. 170, 139 P. 1084 (1914), where *Long v. Pierce County, supra,* was relied upon to enforce a second agreement expanding the obligor's duty without new consideration. *Inman v. W.E. Roche Fruit Co.*, 162 Wash. 235, 298 P. 342 (1931), reached an equally faulty result where the court upheld a modification relieving one party of a contractual obligation and imposing the same duty on the other party without any change in compensation or the furnishing of any other consideration. As recently as *Meyer v. Strom*, 37 Wn.2d 818, 226 P.2d 218 (1951), the court repeated that the original consideration is sufficient to support a subsequent modification.

At the same time a totally divergent line of authority developed. In *Wright v. Tacoma*, 87 Wash. 334, 348, 151 P. 837 (1915), the court said:

> There is no doubt of the rule that a subsequent agreement, which does not form any part of the original contract, is of no force or validity unless supported by a new consideration.

As pointed out by Professor Shattuck at page 60 of the cited law review article, the words "which does not form any part of the original contract" are unfortunate, unnecessary and erroneous.

*Tacoma & E. Lumber Co. v. Field & Co.*, 100 Wash. 79, 170 P. 360 (1918), and *Stauffer v. Northwestern Mut. Life Ins. Co.*, 184 Wash. 431, 51 P.2d 390 (1935), spoke of the necessity of consideration for a modification agreement if the contract had been executed on one side.

*Queen City Constr. Co. v. Seattle*, 3 Wn.2d 6, 99 P.2d 407 (1940), and *Westland Constr. Co. v. Chris Berg, Inc.*, 35 Wn.2d 824, 215 P.2d 683 (1950), both involved a promise to pay more for the same work and both correctly held that consideration was necessary, and lacking under the facts, for the subsequent promise. For additional cases falling within one or the other of these conflicting lines of authority, *see* Shattuck, *Contracts in Washington 1937-1957, supra* at 57-63.

Defendant relies on those cases which refer to modification of contracts which are characterized as "executory," typical of which cases is *La Plante v. Hubbard*, 125 Wash. 621, 217 P. 20 (1923). The trouble with *La Plante* is that the reciprocal surrender of contractual rights constituted consideration but *La Plante* is wrong to the extent that it implies that the original agreement per se gives consideration to the modification agreement. The point is simply that "The promise of one party to forgo his rights under the contract is sufficient consideration for the promise of the other party to forgo his rights." 15 W. Jaeger, *Williston on Contracts* § 1826, at 482 (3d ed. 1972).

There is no magic solution to the problem by concluding that a contract is in the stage where it is "executory." That is merely a shorthand word for describing the condition of performance. It simply calls for a precise analysis of the issue for, as Professor Shattuck points out:

No sensible attack can be made on the consideration issues presented by a new agreement purporting to change a prior contract without first determining what rights

and duties, created by the prior contract, were extant when the new agreement was undertaken, nor without determining the ways in which those rights and duties were to be affected by the new agreement.

Shattuck, *Contracts in Washington 1937-1957*, 34 Wash. L. Rev. 24, 58 (1959).

██ That situation is to be contrasted with the proposition that a modification or subsequent agreement is not supported by consideration if one party is to perform some additional obligation while the other party is simply to perform that which he promised in the original contract. 15 W. Jaeger, *Williston on Contracts* § 1826, at 487 (3d ed. 1972). We hold that under such circumstances the second agreement must be supported by consideration. To the extent that *Long v. Pierce County, supra, Stofferan v. Depew, supra, La Plante v. Hubbard, supra, Inman v. W.E. Roche Fruit Co., supra,* and *Meyer v. Strom, supra,* hold that the original consideration "attaches to and supports" the modification and to the extent that *Tingley v. Fairhaven Land Co., supra, Dyer v. Middle Kittitas Irr. Dist.,* 25 Wash. 80, 64 P. 1009 (1901), hold that no consideration is necessary for the second agreement, they are overruled.

Applying our holding to the facts in this case, we must conclude that no consideration existed to support the October 17th agreement. Under the oral contract plaintiff had an antecedent duty to complete the building; defendant had an antecedent duty to pay a maximum of $56,146 plus extras, plus sales tax. Under the October 17th agreement plaintiff had the same duty while defendant had a lesser duty, unsupported by consideration. This is not a case of the mutual surrender of rights constituting consideration.

Defendant contends that the completion date was extended and that this constituted consideration. The trial court made no finding as to what the completion date was under the original oral contract. A review of the record indicates that there was either no date agreed upon or it was a matter about which the parties had differing recollections, the testimony being quite vague for either proposi-

tion. In any event, defendant made no issue of the completion date in asking for the October 17th agreement. If in fact a definite completion date had been agreed upon and an extension was granted by defendant, there would have been consideration. The record does not sustain such contention.

The other contract provisions contained in the October 17th agreement, and not considered in the oral agreement, were matters which would have been implied under the oral agreement. For example, the October 17th agreement provided that the defendant would accept responsibility for work performed by the subcontractors which *he* selected. Absent an express guarantee by plaintiff of the work of the subcontractors, defendant certainly impliedly accepted the risk of performance of those subcontractors which had been specifically selected by him.

Since this holding disposes of the matter, we do not reach the duress or business compulsion issue.

The Court of Appeals reversed the award of attorney's fees. Under the lien foreclosure statute, RCW 60.04.130, the court has discretion to award attorney's fees to the prevailing party. *Walsh Servs., Inc. v. Feek,* 45 Wn.2d 289, 274 P.2d 117 (1954). Plaintiff is the prevailing party. We find no abuse of discretion. Defendant does not dispute the reasonableness of the fee, but contends that no fee at all should be awarded, a proposition for which he cites no authority.

■ Finally, the Court of Appeals allowed interest only from the date of the judgment. The correct rule is that the interest runs from the date of recording of the lien. *Brower Co. v. Noise Control of Seattle, Inc.,* 66 Wn.2d 204, 209, 401 P.2d 860 (1965). While the trial court allowed interest from the date when the last payment was due, plaintiff has limited his petition for review to the contention that it runs from the date of the lien recording. Consequently we do not determine whether the trial court was correct in the judgment since plaintiff has abandoned that contention.

■ Plaintiff moved for an additional attorney's fee for

the work in the Court of Appeals and in this court. RCW 60.04.130 authorizes such additional award. *Brandt v. Impero*, 1 Wn. App. 678, 683, 463 P.2d 197 (1969), correctly holds: "In our opinion, an appellate court has inherent jurisdiction to fix attorneys' fees for services on appeal when allowable by contract or statute."

The Court of Appeals is reversed and the judgment of the trial court is affirmed except that interest shall run from the date of recording of the lien. An additional award of $500 is made for an attorney's fee in connection with the appeals.

HALE, C.J., FINLEY, HUNTER, HAMILTON, STAFFORD, WRIGHT, and UTTER, JJ., and RUMMEL, J. Pro Tem., concur.

Petition for rehearing denied February 13, 1974.