IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| WORK-FORCE SOLUTIONS, INC, | ) | |
| | ) | No. 35049-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANTOINE CREEK FARMS, LLC, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Antoine Farms appeals from a summary judgment entered in favor

of Work-Force Solutions that granted judgment to Work-Force and dismissed Antoine's

counterclaims. Concluding that there was no modification of the parties' agreement, that

Antoine Farms failed to support its counterclaims, and that there was no public interest

impact to justify a Consumer Protection Act (CPA) claim, we affirm. Ch. 19.86 RCW.

FACTS

Antoine Farms, in 2014, entered into the new business of producing marijuana for

commercial sellers in Washington. The farm is located in Okanogan County and has

some on-site employees. In order to have enough labor to harvest its crop, Antoine

turned to Work-Force, a temporary employment agency located in East Wenatchee that would provide laborers as needed. The companies did not have a written contractual relationship, but operated pursuant to an oral agreement beginning in March 2014.

In general terms, Work-Force would screen workers and send those suitable for harvest work to Antoine Farms. At least initially, Antoine would only accept workers who did not have criminal convictions and had passed drug tests; Work-Force was responsible for conducting background checks and performing drug testing. Work-Force would pay wages to the workers and then invoice the wage amount to Antoine along with its own markup for services. Antoine was permitted to hire employees on a permanent basis.

On a weekly basis, Work-Force would send Antoine Creek a "net 10" invoice, giving Antoine 10 days to pay the amount due. The invoice contained the name of each employee Work-Force had sent Antoine Creek and the number of hours each worked. While these invoices show the names of dozens of individuals who labored for consecutive weeks at Antoine Creek, not all individuals sent to the farm by Work-Force were good fits for the work. On occasion, workers arrive without proper clothing or otherwise failed to perform. There also were occasions where temporary workers were caught smoking marijuana on the premises and were fired.

Over the course of the year, Antoine became late with payments. By September, payments were 49 days late with Antoine owing $32,812. Work-Force threatened to not allow its employees to move on to the Antoine payroll until the payments were made up. Nonetheless, by October, Antoine notified Work-Force that it needed additional crew members while it geared up for harvest. Antoine indicated it was willing to ease up on the criminal background requirements. When Work-Force texted Antoine's president to confirm the change, he replied:

> "Light" criminals or reformed are ok. The issue is we need people ASAP. The weather is going to destroy the crop unless we bring it in. All hands on deck so to speak[.] Use your best judgment on who to send but we need a massive surge—thanks!

Clerk's Papers (CP) at 56-57.

Antoine failed to pay Work-Force over the next six weeks and the balance owed grew to over $60,000. Antoine made some payments and Work-Force thanked them for the payments, but indicated it would not send any more employees until "outstanding invoices are brought down to under 30 days and a consistent pattern of payment is being made." CP at 50. Antoine made partial payments on the invoices into February 2015. Later that month, Antoine's president indicated his intent to pay the outstanding balance of $47,975.05 as follows: $5,000.00 on March 15, 2015; $10,000.00 on April 15, and the balance of $32,975.05 on May 15. CP at 137. Work-Force did not respond to the

3

proposal. Antoine made the $5,000 March payment, but only paid $5,000 in April and $1,388 in May. Antoine then proposed to make $500 payments each month on the 15th.

Work-Force filed suit against Antoine on June 19, 2015, alleging breach of contract and asserting that over $37,000 was owed. Antoine answered the following month, denying the allegations and raising several affirmative defenses, including that the parties had reached a repayment agreement. Antoine also asserted counterclaims, eventually alleging that Work-Force had breached the contract by failing to provide qualified workers, failing to properly screen workers, and refusing to permit direct hiring of Work-Force's employees. Also among the allegations was a Consumer Protection Act claim.

In April 2016, Work-Force moved for summary judgment on its complaint and to dismiss the counterclaims. Antoine responded and argued that there were disputed questions of material fact precluding summary judgment. The trial court ruled in favor of Work-Force, concluding that there was no modification of the contract that changed the repayment obligations. The court also rejected the counterclaims, ruling that Antoine had not proven that it suffered losses due to the workers supplied by Work-Force and that the CPA did not apply to this agreement.

Antoine timely appealed to this court. A panel heard oral argument on the matter.

ANALYSIS

Antoine's appeal presents three issues, which we address in a slightly different order than the appellant does. After initially discussing the standards governing our review of this appeal, we turn first to the trial court's ruling on Work-Force's complaint. We then consider the ruling concerning the counterclaims before turning to the CPA issue.

Appeals from summary judgment are reviewed under well settled principles. We review a summary judgment ruling de novo. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). The facts, and all reasonable inferences to be drawn from them, are viewed in the light most favorable to the nonmoving party. *Id.* If there is no genuine issue of material fact, summary judgment will be granted if the moving party is entitled to judgment as a matter of law. *Id.*; CR 56(c). This court may also determine a question of fact as a matter of law when reasonable minds can reach only one conclusion. *Miller v. Likins*, 109 Wn. App. 140, 144, 34 P.3d 835 (2001).

*Work-Force's Claim*

Antoine argues that summary judgment should not have been granted to Work-Force on its complaint because the agreement had been modified by the parties. It thus argues there is at least a question of material fact that should be decided at trial. However, there is no evidence that Work-Force agreed to Antoine's proposed debt restructuring or that there was any consideration for the alleged modification.

5

The evidence shows that Work-Force repeatedly requested that Antoine catch up on its payments, Antoine would promise to catch up, and then it would fail to keep its promise. Ultimately, Antoine proposed a payment plan where it would pay thousands of dollars each month and retire the debt in three months. Instead, it could not maintain that schedule into the second month and unilaterally informed Work-Force it would instead only pay $500 a month.[1] Antoine never produced any evidence showing Work-Force agreed to any of its proposed payment modifications except for an e-mail that stated, "Thank you for paying what you could." This "thank you," however, was immediately followed by the information that Work-Force would no longer be able to send employees to Antoine because of the underpayments. This in no way shows an agreement to a partial payment plan.

A second problem, highlighted by the trial judge, is that there was no consideration offered for the alleged modification. There must be independent consideration supporting the modification of a contract separate from the consideration supporting the original agreement. *Rosellini v. Banchero*, 83 Wn.2d 268, 273, 517 P.2d 955 (1974). The parties have not identified any independent bargained-for consideration

---

[1] The trial court noted the absurdity of expecting Work-Force to agree to a proposal that would, without interest, take 61 months to retire the debt.

for us and, like the trial judge, we discern none from this record.[2] For this reason, too, the modification argument fails.

Antoine did not dispute the debt owed to Work-Force. It also never demonstrated that the two sides had agreed to a modification or that there was any bargained-for consideration for doing so. Accordingly, there were no *material* facts in dispute. The trial court properly granted summary judgment to Work-Force on its debt claim.

*Counterclaims*

Antoine also argues that the court erred in dismissing its counterclaims, again contending that material questions of fact existed. However, Antoine never showed that Work-Force's alleged failures actually caused Antoine's losses.

In order to prevail on a breach of contract claim, a party must establish that (1) a duty imposed by the contract (2) was breached, with (3) damages proximately caused by the breach. *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995). The trial court concluded that Antoine's counterclaims failed on the final element.

---

[2] Antoine suggests on appeal that its forbearance from asserting its own legal claims operated as consideration. But consideration must be bargained for. *See* RESTATEMENT (SECOND) OF CONTRACTS § 71 (AM. LAW INST. 1981). There is no evidence that Work-Force was aware of any claims and sought forbearance.

Antoine contends that Work-Force breached their agreement by sending unqualified workers, workers who had not been subjected to drug screening, and workers who had not been subjected to criminal background checks. Accepting the truth of these allegations, as must be done at summary judgment, Antoine still failed to provide evidence that it was harmed by these failures. How did the harvest efforts of workers who had not been screened or tested harm Antoine? How did they effect its cash flow? How did any unqualified, or poorly qualified, workers hurt Antoine? In the absence of information that there were better workers who would have been sent but for the unqualified workers in place, Antoine simply has no evidence that the workers who appeared somehow impacted the company's bottom line.[3]

The trial court correctly determined that Antoine could not show it was damaged by Work-Force's alleged failures. Accordingly, summary judgment was properly granted on the counterclaims.

*Consumer Protection Act Claim*

The final contention we address is the claim that the trial court erred in dismissing Antoine's CPA claim. Because Antoine failed to establish the public interest element, the trial court correctly determined that the claim failed as a matter of law.

---

[3] Antoine's contention that it made more money the second year when it was not dependent on Work-Force for harvest workers does not raise a material question of fact in the absence of showing that the conditions the second year were alike enough that the only significant difference was the quality of the workforce.

Washington's Consumer Protection Act is codified at chapter 19.86 RCW. To establish a claim under the CPA, a party must prove (1) an unfair or deceptive act or practice (2) occurring in trade or commerce (3) with a public interest impact, and (4) an injury to the plaintiff in his or her business or property, (5) caused by that act or practice. *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 782, 295 P.3d 1179 (2013). The public interest impact element is informed by consideration of five relevant factors. Those five factors are:

> (1) Were the alleged acts committed in the course of the defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 790, 719 P.2d 531 (1986).

Although the first of the five factors is undoubtedly satisfied, it is doubtful that any of the other factors are satisfied. The allegation that Work-Force breached its agreement with Antoine simply does not suggest that the public was negatively impacted. There is no evidence that Work-Force breached similar agreements with its other clientele before or after its relationship with Antoine. There is no indication that anyone other than Antoine was somehow effected. In short, the record does not establish any

9

public impact. This case was simply a breach of contract case; it was not a matter affecting Washington consumers.

The trial court correctly recognized that the evidence did not support the CPA claim. Summary judgment was properly granted.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Fearing, J.

Siddoway, J.