[No. 5901–1.  Division One.  January 22, 1979.]

D. I. KNIGHT, ET AL, *Appellants*, v. SEATTLE–FIRST NATIONAL BANK, ET AL, *Respondents*.

494

*Sherwood, Bentley & Anderson* and *Robert B. Sherwood,* for appellants.

*Anderson, Hunter, Dewell, Baker & Collins, P.S.,* and *Julian C. Dewell,* for respondents.

RINGOLD, J.—D. I. and Gertraud Knight appeal from an order of dismissal entered after summary judgment was granted in favor of the defendant, Seattle–First National Bank (Bank). The Knights sought an injunction of the sale of real estate to James Patrick, or alternatively a judgment for damages.

The Bank as mortgagee of the subject property (two lots near Glacier, Washington) on July 18, 1975, obtained a decree of foreclosure and judgment against plaintiffs Knight amounting to $20,311.99, including interest and costs. At the foreclosure sale the Bank was the successful bidder. The Knights were unable to redeem within the

statutory period, which the Bank agreed to extend to July 30, 1976. Thereafter the Bank received the sheriff's deed.

Before the expiration of the redemption period the Knights had employed the defendant, Kenneth Johnston, to attempt to refinance the property. On December 16, 1976, the Knights learned that Johnston was negotiating with the Bank to buy the property on his own account. At a meeting with the Bank's attorney Mrs. Knight was advised that if she could get Johnston to withdraw his offer of purchase, the Bank would sell the property to the Knights for the amount then owing, approximately $22,000. She also claims that the Bank told her it would not conclude the sale within 2 or 3 weeks.

On December 22, 1976, the Bank entered into an agreement with Johnston's approval for the sale of the property to Patrick. The Knights did not learn of this sale until after they had commenced the present lawsuit. By letter dated December 22, 1976, the Knights' attorney requested Johnston to release the Bank from any obligation arising from the Bank's agreement to sell the property to Johnston.[1]

The trial court held that the Bank's negotiations with Mrs. Knight amounted to an offer of unilateral contract to the Knights and that the offer could be withdrawn before acceptance. We affirm the judgment dismissing the claims against the Bank.

The Knights contend that the offer by the Bank was in effect an oral agreement to enlarge the time for redemption and to permit redemption after the statutory period had expired, that they relied upon this agreement, and that it is therefore binding upon the parties. No Washington authorities are cited to support this theory that an oral agreement to enlarge the time for redemption is enforceable. The authorities cited by the plaintiff, however, support a rule that an oral agreement to extend the redemption period may be enforced: (1) if made prior to the expiration of the

---

[1] In testing the motion for summary judgment we have accepted as true these facts as contended by the Knights.

redemption period; or (2) in equity as a constructive trust; or (3) if supported by consideration. 54 A.L.R. 1207 (1928); 59 C.J.S. *Mortgages* § 844, at 1614 (1949); 55 Am. Jur. 2d *Extension of Time by Agreement of Parties* § 895, at 777 (1971). We find no basis here to support the rule proposed by the Knights. The issue must be analyzed by applying the standard rules of contract.

On December 17, 1976, the Bank offered to sell the property to the Knights provided they procured the withdrawal of Johnston's offer to the Bank and paid $22,000. The Knights claim that the Bank thereby made an offer for a unilateral contract which could have been accepted by their performance of the two acts. In agreeing to pay on January 6, 1977, and filing the present action against Johnston and the Bank on January 13, 1977, the Knights argue they accepted the Bank's offer.

An offer of unilateral contract is an offer to enter into a contract upon the doing of a bargained for act by the offeree. The rule is stated in *Cook v. Johnson,* 37 Wn.2d 19, 23, 221 P.2d 525 (1950):

A unilateral contract is a promise by one party—an offer by him to do a certain thing in the event the other party performs a certain act. The performance by the other party constitutes an acceptance of the offer and the contract then becomes executed. Until acceptance by performance, the offer may be revoked either by communication to the offeree or by acts inconsistent with the offer, knowledge of which has been conveyed to the offeree.

*See* 1 Williston, *Contracts* § 60 (1920). The Bank withdrew its offer when it sold to Patrick. Was the Bank required to keep its offer open when it failed to communicate notice of withdrawal of the offer to the Knights?

The Knights contend that their conduct imposed an obligation on the Bank not to withdraw its offer. The rule is well recognized by American courts that part performance by the offeree may preclude withdrawal of the offer.

The principle is enunciated in 1 Williston, *Contracts* § 60A, at 188–91 (3d ed. 1957):

The right of the offeror to revoke his offer even after part performance by the offeree is supported by certain American decisions but in other cases where the question has arisen the offeror has been held bound. . . .

The difficulty may best be met . . . by holding, if the consideration requested in an offer of a unilateral contract will necessarily take time and expense for its performance, that the offer contains by implication a subordinate offer to keep the main offer open for a reasonable time in consideration of the beginning of performance of the offeree.

(Footnotes omitted.)

The Restatement view follows:

If an offer for a unilateral contract is made, and part of the consideration requested in the offer is given or tendered by the offeree in response thereto, the offeror is bound by a contract, the duty of immediate performance of which is conditional on the full consideration being given or tendered within the time stated in the offer, or, if no time is stated therein, within a reasonable time.

Restatement of Contracts § 45, at 53 (1932).

Not satisfied with the statement of the rule promulgated in the Restatement, the drafters of the Restatement (Second) of Contracts § 45 (Tent. Draft No. 1, 1964), conceiving the problem in terms of an option contract, write as follows:

(1) Where an offer invites an offeree to accept by rendering a performance and does not invite a promissory acceptance, an option contract is created when the offeree begins the invited performance or tenders part of it.

(2) The offeror's duty of performance under any option contract so created is conditional on completion or tender of the invited performance in accordance with the terms of the offer.

■ The fact that the Knights did not learn of the Bank's inconsistent act, sale of the property to Patrick, until after commencement of the present lawsuit directs the inquiry, then, to whether performance in sending the letter to Johnston and commencing the lawsuit constitute such part performance to entitle the Knights to enforcement of

the Bank's offer.[2] Comment *a* to Restatement of Contracts § 45 (1932) distinguishes the effect of actual performance and beginning preparations:

> What is tendered must be part of the actual performance requested in order to preclude revocation under this Section. Beginning preparations though they may be essential to carrying out the contract or to accepting the offer, is not enough.

The writers of the Restatement (Second) of Contracts (Tent. Draft No. 1, 1964) suggest that the invitation to perform necessarily includes an invitation to begin performance and that beginning of performance implies a promise to complete performance. Section 45, comment *d*. Preparations, although they may be essential to carrying out the contract or to accepting the offer, are not enough. The distinction turns on many factors:

> the extent to which the offeree's conduct is clearly referable to the offer, the definite and substantial character of that conduct, and the extent to which it is of actual or prospective benefit to the offeror rather than the offeree, as well as the terms of the communications between the parties, their prior course of dealing, and any relevant usages of trade.

Restatement (Second) of Contracts § 45, comment *f* (Tent. Draft No. 1, 1964).

Applying these factors to the facts at hand, we see that the conduct of the Knights in beginning the lawsuit was referable to the offer, and that the conduct was of a definite and substantial character. It is apparent, however, that the lawsuit, begun after the sale to Patrick, can be of no actual or prospective benefit to the Bank; indeed the contrary is true. The terms of the offer called for the withdrawal of Johnston's offer to buy and tender of the purchase price. The Knights promise to pay, absent any tender of the

---

[2]The case *Browning v. Johnson*, 70 Wn.2d 145, 422 P.2d 314 (1967), relied upon heavily by the Knights, is inapposite. There the issue was the sufficiency of the invited and proffered consideration. Here the issue is how much of the invited performance must be proffered in order to bind the offeror to his promise. The two issues are different.

money, is immaterial since the offer called for acceptance by performance, not by promissory obligation. That the Knights initiated a lawsuit of uncertain outcome did not bring them significantly closer to achieving the bargained–for performance. The prior course of dealing between the Knights and the Bank reflects a long unsuccessful effort by the Knights to retain the property; the Bank had indulged various means to enable them to do so, all of which had failed. The Knights' action therefore represented only preparations to undertake the invited performance, and did not constitute part performance which would require enforcement of the Bank's offer.

In view of the foregoing disposition, we express no opinion respecting the Bank's contentions that the statute of frauds, RCW 64.04.010 and .020 applies.

FARRIS, C.J., and WILLIAMS, J., concur.