95 P.3d 394 (2004)
VEHICLE/VESSEL LLC, DRA Real Estate, a limited liability company, and Daniel R. Antoni, a single man, Respondents,
v.
WHITMAN COUNTY, a municipal corporation, and the State of Washington, Washington State Department of Licensing, Defendants,
Golden Key Properties, LLC, d/b/a Windermere Property Management, a Washington limited liability corporation, Appellant.
No. 22355-8-III.
Court of Appeals of Washington, Division 3, Panel Two.
August 3, 2004.
*396 Gary James Libey, Attorney at Law, Nuxoll, Libey, Ensley, Esser, Colfax, WA, for Appellant.
Paul James Burns, Attorney at Law, Spokane, WA, for Respondent.
SCHULTHEIS, J.
Whitman County entered into a subagency contract with Daniel Antoni (doing business as DRA Real Estate and Vehicle/Vessel LLC), who had been appointed by the Department of Licensing (DOL) as the County's vehicle licensing agent. Later, Mr. Antoni submitted a conditional resignation, offering to resign his appointment on the condition that one of his employees was appointed the new subagent. The DOL appointed Golden Key Properties, LLC as the successor subagent instead of Mr. Antoni's recommended replacement. Consequently, Mr. Antoni withdrew his resignation.
The trial court, in sorting out the claims of Mr. Antoni, Golden Key, the County, and the DOL, concluded the resignation was invalid and granted Mr. Antoni's motion for declaratory and injunctive relief. Golden Key now appeals, contending material issues of fact remain whether Mr. Antoni relied on promises from the County and whether he waived or modified the condition of his resignation. Because we find that the conditional resignation was revoked due to nonperformance, and additionally find that the County was not required to offer Golden Key a subagency contract, we affirm.

FACTS
Mr. Antoni has served as the vehicle licensing subagent for the County since 1988. In October 2001, Mr. Antoni and the County executed a 10-year vehicle licensing subagency contract. The contract states that the subagent may terminate the contract by written notice of "intent to terminate on a date certain, which date shall not be less than thirty days from the date of notice." Clerk's Papers (CP) at 39. Less than two months later, on November 27, Mr. Antoni met with county auditor David Repp and Dianne Brewster, operations manager for Mr. Antoni's business. The three discussed Mr. Antoni's plan to sell his business to Ms. Brewster, subject to the approval of Mr. Repp and the DOL. All three parties signed a "Letter of Intent" outlining Mr. Antoni's purchase and sale agreement and indicating that "[t]he parties agree the business only is what is being sold, Not the appointment." CP at 48. As part of the agreement, Mr. Antoni would work a few days a month for Ms. Brewster and would have the first option to buy the business back if Ms. Brewster wanted to sell later. The letter of intent also stated that the final sale and appointment were conditioned on Mr. Repp's approval, "which must meet with D.O.L.'s guidelines and contract assignment terms." CP at 48.
After conferring with other county auditors and the DOL, Mr. Repp learned that he had to comply with the requirements of RCW 46.01.140 for the transfer of the licensing subagency. This statute, in pertinent part, sets out the procedure for the subagent's appointment:
(2) A county auditor appointed by the director may request that the director appoint subagencies within the county.
(a) Upon authorization of the director, the auditor shall use an open competitive process including, but not limited to, a written business proposal and oral interview to determine the qualifications of all interested applicants.
(b) A subagent may recommend a successor who is either the subagent's sibling, spouse, or child, or a subagency employee, as long as the recommended successor participates in the open, competitive process used to select an applicant. In making successor recommendation and appointment determinations, the following provisions apply:
(i) If a subagency is held by a partnership or corporate entity, the nomination must be submitted on behalf of, and agreed to by, all partners or corporate officers.

*397 (ii) No subagent may receive any direct or indirect compensation or remuneration from any party or entity in recognition of a successor nomination. A subagent may not receive any financial benefit from the transfer or termination of an appointment.
(iii) (a) and (b) of this subsection are intended to assist in the efficient transfer of appointments in order to minimize public inconvenience. They do not create a proprietary or property interest in the appointment.
(c) The auditor shall submit all proposals to the director, and shall recommend the appointment of one or more subagents who have applied through the open competitive process. The auditor shall include in his or her recommendation to the director, not only the name of the successor who is a relative or employee, if applicable and if otherwise qualified, but also the name of one other applicant who is qualified and was chosen through the open competitive process. The director has final appointment authority.
RCW 46.01.140.
Mr. Repp told Mr. Antoni that he would begin advertising for subagency bids after he received Mr. Antoni's resignation. In response, Mr. Antoni drafted a "Conditional Resignation of Appointment" on January 8, 2002. CP at 50. Addressed to Mr. Repp and the director of licensing, the letter indicated that the resignation was conditional upon the appointment of Ms. Brewster:
I am hereby submitting this letter of resignation in regards to my appointment as the subagent for the Pullman Vehicle/Vessel Licensing Office  DRA REAL ESTATE, LLC. This resignation will only become effective upon the selection and/or appointment of Dianne D. Brewster as the new Pullman Licensing Agent. In the event Dianne D. Brewster is not selected/appointed as the new licensing agent for the Pullman office, this resignation is withdrawn and shall become null and void.
CP at 50. Mr. Repp accepted the resignation without objection, although he warned Mr. Antoni that the DOL would make the final appointment decision. According to Mr. Repp, Mr. Antoni indicated that this was fine with him and that Mr. Repp should begin the advertising process.
After interviewing several applicants, Mr. Repp submitted a recommendation to the DOL that it appoint Golden Key as the successor subagent. The DOL issued a "Certificate of Appointment" to Golden Key on March 25, 2002. CP at 113, 253. Mr. Antoni learned of Golden Key's appointment and sent a facsimile to the DOL and Mr. Repp on April 4 withdrawing his letter of resignation. He then filed a complaint for declaratory and injunctive relief on April 16. Among other relief, he requested an order declaring his subagent appointment in full force and an injunction compelling the County to rescind or revoke any contract with Golden Key. Later, Mr. Antoni amended the complaint to add Golden Key as a defendant.
In early May 2002, Golden Key wrote to the DOL noting that although it had been appointed as successor subagent and had already committed to a signed lease for the vehicle licensing business, it had not received official confirmation of its subagency. The DOL replied that the certificate of appointment alone did not establish the subagency, but that RCW 46.01.140(3) also required the county auditor to enter into a subagency contract with the appointee. Golden Key was never offered a contract. It later filed a cross claim against the County and a motion for summary judgment dismissal of Mr. Antoni's complaint against Golden Key. It also requested the court to order the County to enter into a contract with it for the subagency.
In April 2003, the trial court granted Golden Key's motion for summary judgment dismissal of the claims against it asserted by Mr. Antoni. However, in August the trial court issued an order and memorandum opinion granting Mr. Antoni's motion for declaratory and injunctive relief. Golden Key timely appeals.

WAIVER OR MODIFICATION OF TERMS
Golden Key contends Mr. Antoni waived or modified the condition of his resignation. We first establish the standard of review. According to Golden Key, the trial *398 court failed to decide relevant issues of fact indicating waiver or modification. With its insistence that disputed issues of fact remain, Golden Key seems to assert that the order granting declaratory and injunctive relief should be reviewed by the same standards as a summary judgment. However, an order for declaratory relief based on affidavits is a decision on the merits and is not treated as a summary judgment on appeal. In re Estate of Gardner, 103 Wash.App. 557, 560, 13 P.3d 655 (2000). We review the order de novo and do not view the evidence in a light favorable to either party. Id. at 561, 13 P.3d 655.
Our threshold concern is with the nature of Mr. Antoni's conditional resignation. The terms of the resignation indicate that it is an offer of a unilateral contract: a promise to do a certain thing (resign his appointment) in the event the other party performs a certain act (appoints Ms. Brewster as the replacement subagent). St. John Med. Ctr. v. Dep't of Soc. & Health Servs., 110 Wash.App. 51, 65, 38 P.3d 383, review denied, 146 Wash.2d 1023, 52 P.3d 520 (2002); Knight v. Seattle First Nat'l Bank, 22 Wash.App. 493, 496, 589 P.2d 1279 (1979). Until the offeree accepts by performance, the offer of a unilateral contract may be revoked by the offeror without adverse legal consequences. St. John, 110 Wash.App. at 65, 38 P.3d 383; Knight, 22 Wash.App. at 496, 589 P.2d 1279. There is no contract until the bargained-for act is performed. BC Tire Corp. v. GTE Directories Corp., 46 Wash.App. 351, 355, 730 P.2d 726 (1986). Consideration for a unilateral contract consists of the offeree's performance of the required terms. Multicare Med. Ctr. v. Dep't of Soc. & Health Servs., 114 Wash.2d 572, 584, 790 P.2d 124 (1990).
In construing the terms of a unilateral contract, we give great weight to the intent of the parties as expressed in the plain language of the agreement. St. John, 110 Wash.App. at 65, 38 P.3d 383. Mr. Antoni's conditional resignation provided that the resignation would only become effective upon Ms. Brewster's appointment as the new subagent. This intent was further clarified by the statement that the resignation would be withdrawn and would become "null and void" if Ms. Brewster was not appointed. CP at 50. Ms. Brewster was not appointed. Consequently, unless Mr. Antoni waived or modified his offer, it was revoked due to nonperformance. Finley v. Curley, 54 Wash.App. 548, 556, 774 P.2d 542 (1989).
Golden Key contends Mr. Antoni waived or modified the terms of his resignation when he agreed that Mr. Repp would have to advertise the position pursuant to RCW 46.01.140(2)(a) and that the DOL would make the final decision.[1] Waiver  the intentional relinquishment of a known right  may be express or implied. Jones v. Best, 134 Wash.2d 232, 241, 950 P.2d 1 (1998). Implied waiver will not be inferred; the party claiming waiver must present unequivocal acts or conduct that show an intent to waive. Id. at 241-42, 950 P.2d 1. Modification of a contract requires mutual agreement and a mutual change of obligations or rights. Rosellini v. Banchero, 83 Wash.2d 268, 273, 517 P.2d 955 (1974); MacDonald v. Hayner, 43 Wash.App. 81, 84, 715 P.2d 519 (1986). Here, the record shows neither waiver nor modification of the terms of the conditional resignation.
Golden Key contends Mr. Antoni orally agreed with Mr. Repp that the resignation was final and that it would be effective upon the appointment of any successor. However, nothing in the record indicates that Mr. Antoni ever adopted this view. According to Mr. Repp's declaration, he repeatedly warned Mr. Antoni that the DOL would make the final appointment decision after the open public application process. Clearly Mr. Antoni knew the procedures for appointment of a successor subagent. His letter of intent refers to the DOL's guidelines and contract assignment terms. Mr. Antoni's recognition that the DOL had the final appointment authority after an open competitive process did not constitute modification or waiver of the ultimate required act: appointment of Ms. Brewster. Recognizing that the DOL might *399 not appoint Ms. Brewster, Mr. Antoni maintained the right to withdraw his resignation.[2] There is simply no evidence of consideration to support his relinquishment of this condition. Rosellini, 83 Wash.2d at 273, 517 P.2d 955 (the modification must be supported by new consideration).
In summary, we find that the conditional resignation was revoked due to nonperformance of its required terms. We decline to address the trial court's additional conclusion that the conditional resignation breached the terms of the subagency contract.

STATUTORY REQUIREMENTS
In response to Mr. Antoni's motion for declaratory and injunctive relief, Golden Key moved for summary judgment dismissal of Mr. Antoni's claims against it and requested the trial court to order the County to enter into a subagency contract with Golden Key. The trial court granted summary judgment dismissal of the claims and denied the motion to compel the County to enter into a contract. On appeal, Golden Key contends RCW 46.01.140(3)(b) requires the County to offer it a subagency contract.
After the open competitive process has taken place pursuant to RCW 46.01.140(2) and the DOL has appointed a subagent, RCW 46.01.140(3)(b) provides that the "subagent appointed under subsection (2) of this section shall enter into a standard contract with the county auditor, developed with the advice of the title and registration advisory committee." Golden Key contends the use of the word "shall" indicates that the county auditor has a mandatory duty to enter into a contract with any subagent appointed by the DOL. By further extension, the appointed subagent would also have a mandatory duty to bind himself or herself to a contract with the County. The statute should not be read to require such an unlikely interpretation.
We give statutory words their plain and ordinary meaning unless a different meaning is specified. Erection Co. v. Dep't of Labor & Indus., 121 Wash.2d 513, 518, 852 P.2d 288 (1993). Usually the word "shall" is mandatory when it is used to confer a right or benefit and operates to create a duty. Id.; McIntyre v. Fort Vancouver Plywood Co., 24 Wash.App. 120, 127, 600 P.2d 619 (1979). Our primary goal is to ascertain and give effect to the legislative intent. Sammamish Cmty. Mun. Corp. v. City of Bellevue, 107 Wash.App. 686, 691, 27 P.3d 684 (2001). In doing so, we seek to avoid unlikely, strained, or absurd interpretations of statutory language. Thurston County v. City of Olympia, 151 Wash.2d 171, 175, 86 P.3d 151 (2004).
It is clear that in enacting RCW 46.01.140 the legislature intended to provide a process for appointing and employing county auditors and their subagents for collecting fees and processing vehicle license plates. The statute specifically states that appointments of subagents "do not create a proprietary or property interest in the appointment." RCW 46.01.140(2)(b)(iii). If the County wants to hire a new or successor subagent, it must ask the DOL to make an appointment from qualified prospects recommended by the auditor. RCW 46.01.140(2). The County can hire only applicants appointed by the DOL. RCW 46.01.140(2)(c), (3)(b). Employment is a two-step process: first the applicant must be appointed by the DOL, and second the county auditor enters into a contract with the appointee. RCW 46.01.140(2)(c), (3)(b).
Interpretation of RCW 46.01.140(3)(b) as requiring the auditor and the subagent to enter into a contract of employment is absurd. The County cannot be required to hire a subagent if the position is no longer open, and the appointee cannot be required to enter into a contract of employment with the County. What is obviously intended by the language of RCW 46.01.140(3) (b) is that if the County hires a subagent, it must hire the *400-406 applicant appointed by the DOL, and the subagent is entitled to enter into a contract that has been developed with the advice of the DOL. The use of the word "shall" in this context is mandatory only insofar as it requires a contract with certain minimum provisions described in RCW 46.01.140(3)(c).
Golden Key's interpretation of RCW 46.01.140(3)(b) does not comport with common sense or with legislative intent. Accordingly, we hold that the trial court properly denied the motion to compel the County to enter into a subagency contract with Golden Key.
Affirmed.
WE CONCUR: KATO, C.J., and BROWN, J.
NOTES
[1] Mr. Antoni contends the issue of waiver was not properly raised at a hearing in a CR 12(b)(6) motion. However, the record shows that the issue was tried by the implied consent of the parties. Farmers Ins. Co. of Wash. v. Miller, 87 Wash.2d 70, 76, 549 P.2d 9 (1976).
[2] Mr. Repp's declaration reveals a muddy logic: "I remember having several discussions with Mr. Antoni advising him that there could be no assurance of Ms. Brewster's appointment, yet he wanted to continue with his attempt at a conditional resignation which I considered final because he had submitted it in writing dated January 8, 2002, upon which I relied in obtaining a new Pullman licensing subagent." CP at 247-48. It is unclear how submitting the conditional resignation in writing on January 8 led Mr. Repp to believe the resignation was actually final on that date.